Roger Brown and Larry Waites filed identical, separate libel actions against Robert R. Bryan and James Allen Brown, as codefendants. Each complaint contained one count as follows:
 "Plaintiff claims of the defendants the sum of Five Hundred Thousand and No/100 ($500,000.00) Dollars as damages for that heretofore on, to-wit: the 14th day of January, 1974 in Jefferson County, Alabama defendants falsely and maliciously published of and concerning the plaintiff in a writing styled `Petition for Removal' the following matter, with intent to defame the plaintiff:
 `That plaintiff asked the defendant, James Allen Brown, to plant narcotics in defendant, Robert Bryan's, airplane and residence and that a conviction of defendant, Bryan, could most likely be obtained for possession of narcotics.'
 "Plaintiff alleges that on said occasion, to-wit: the 14th day of January, 1974, he was a Deputy District Attorney in Jefferson County, Alabama and that said matter was false and untrue and said matter was maliciously published by defendants, all to plaintiff's damage as aforesaid, hence this suit."
The defendants filed identical answers alleging five defenses: (1) Not guilty; (2) That Robert Bryan did not make any statement in his individual capacity but filed a Petition in the United States District Court in behalf of his client; (3) That "there is no evidence" that Robert Bryan performed any service other than in his capacity as an attorney acting for a client; (4) That Robert Bryan individually never made a statement pertaining to plaintiff; (5) Plaintiff was guilty of negligence which proximately contributed to his injuries.
By consent of all parties the two cases were consolidated for trial. Motion by defendants for summary judgment was denied, and a jury trial ensued resulting in a verdict for each plaintiff in the amount of $15,000.00. Judgment was entered accordingly in each case on September 16, 1975.
On December 22, 1975 the following Notice of Appeal was filed by the defendant-appellants:
 "Notice is hereby given that Robert R. Bryan and James Allen Brown appeal to the above named court from the judgment *Page 579 
of the trial court entered on September 15, 1975 and the final order of said court entered on December 10, 1975. With this notice of appeal appellants file security for costs of appeal."
Security for costs of appeal was filed and approved by the circuit clerk on that same date.
On December 12, 1975, the attorney for plaintiff, Roger Brown, filed an Affidavit in Garnishment on Judgment, which was followed on December 22, 1975 by a Writ of Garnishment directed to a Birmingham bank. Thereafter, on January 12, 1976, defendant-appellants filed with the clerk their Supersedeas Bond approved by the trial judge. With this bond a sureties affidavit was filed. The garnishment was then released by the judge.
The next day, January 13, 1976, plaintiffs filed their motion to set aside the order releasing the garnishment and to strike the supersedeas bond. Thereafter, on January 16, 1976, the Court allowed the defendant, Robert Bryan, until January 30, 1976 to file and have approved an additional supersedeas bond. Such an additional bond was filed and approved on February 2, 1976.
We note these steps in the appeal in view of appellees' motion to dismiss the appeal which raised several grounds, among them that appellant, James Allen Brown, (1) failed to timely effect his appeal by giving notice and filing therewith security for costs under Rule 7, ARAP, and (2) failed to file a notice of appeal within forty-two days from the entry of judgment against him.
Rule 7 of our Appellate Rules contemplates filing of "a supersedeas bond or other undertaking which includes security for the payment of costs on appeal," or security for costs which is to be filed in the trial court by appellant. This security for costs is, under the rule, to be approved by the court clerk. This was done here. Rule 7, however, pertains only to costs on appeal, and the failure to give security for costs is not fatal to appellate jurisdiction.
Under Rule 3, ARAP, an appeal is taken in a civil case by the timely filing of a notice of appeal with the clerk of the trial court, specifying the parties appealing, designating the judgment appealed from, and naming the court to which the appeal is taken. Joint notices of appeal are permitted, after which the appellants are allowed to proceed as a single appellant. Timely filing of the notice of appeal is jurisdictional, and under Rule 4 must be filed with the clerk of the trial court within forty-two days (six weeks) of the date of the entry of the judgment appealed from. The time limitation of Rule 4, however, is subject to the exception found in Rule 49, ARAP, which applies those rules to:
". . . all appellate proceedings
. . . . .
 "(2) in which the decision, judgment or order is entered prior to December 1, 1975, and the notice of appeal is filed on or after December 1, 1975, except those rules which establish a time for invoking an appellate proceeding, including an appeal under Rule 4;"
Thus the time limit of the new rules, forty-two days, did not apply to Brown's notice of appeal, but the old six months limitation applied.
As noted above, judgments on the verdicts were entered in each case on September 16, 1975. Motions for judgments N.O.V. or for new trial which suspended the running of the time for filing a notice of appeal were filed in each case on September 25, 1975 by Robert T. Bryan (but not by Brown) and continued from time to time until overruled on December 10, 1975. Under the old rules notice of appeal was due to be filed not later than six months thereafter, or by March 16, 1976. Because notice of appeal was filed on behalf of defendant Bryan on December 22, 1975, we conclude that his notice was timely filed. Brown also timely filed his appeal. The time for filing his notice of appeal began to run from the date of the judgment, September 16, 1975. His notice of appeal was filed on December 22, 1975. Therefore, we deny appellee's motion to dismiss Brown's appeal.
Appellees additionally assert in their motion to dismiss the appeal that the clerk's *Page 580 
record was not completed and a certificate of completion filed in this Court within twenty-eight days from the date of notice of appeal. Here appellees rely upon Rule 11, ARAP. According to the record, the certificate of completion of clerk's record, dated January 30, 1976, was filed in this Court on February 3, 1976, or forty-three days after notice of appeal, or fifteen days after the date required. The certificate of completion of the record on appeal, which was due to be filed in this Court within seven days of the filing with the circuit clerk, on February 12, 1976, of the reporter's transcript, was filed in this Court on February 16, 1976, or four days thereafter, thus it was filed within the time provided by Rule 11.
However, in view of the serious nature of this case and the fact that the parties each applied to this Court and received additional time in which to file briefs in a case which all considered complex, and involves a record over two hundred pages in length, with many exhibits, we do not consider it appropriate at this juncture to dismiss the appeal on this appellee's other grounds, i.e., that appellants' brief was not followed by a statement of the case, that the appellants' table of cases was not alphabetically arranged, and that appellants failed to designate the Appendix, even though we deprecate these departures from the appellate rules, and by this particular decision we are not establishing a precedent of liberality in applying the time limitations imposed by the appellate rules.
Accordingly, we deny appellees' motion to dismiss the appeal.
The defendant, Robert R. Bryan, was called as a witness for plaintiffs. He testified that on January 14, 1974 he was a practicing attorney in Birmingham and that the two plaintiffs were assistant district attorneys, the same persons referred to in the petition for removal Bryan filed in federal court. Bryan was representing James Brown in three criminal cases, two heroin sales and one robbery, the drug charges having been sounded on the Jefferson County Circuit Court trial docket that morning. Apparently, Bryan had represented James Brown as counsel in the robbery case, being employed by Brown shortly after his arrest following indictment, about September 22, 1972. According to the removal petition set out below, Bryan began to represent James Brown in the drug cases on August 9, 1973 but learned of the alleged conspiracy to "frame" him "during the early portion of 1973." Bryan announced "ready" subject to the availability of a witness, Pamela Mason, then sometime later that day he returned to his office. That afternoon he filed a Petition for Removal in the clerk's office of the United States District Court in Birmingham, the pertinent part of which follows:
 "3. Upon information and belief, the trial of Case Nos. 26107 and 26108 is scheduled to begin during the present week. The trial of Case No. 25671 is scheduled to begin on or about January 28, 1974.
 "4. For the reasons set forth below, Petitioner will be denied or can not enforce in the courts of the State of Alabama rights under laws providing for the equal civil rights of citizens of the United States, or of all persons of the jurisdictions thereof.
 "5. Petitioner was indicted on, to-wit, August 10, 1972 for an alleged robbery. Thereafter the actual culprit, Mickey Taylor, entered a plea of guilty to the subject charge along with several drug charges and was placed upon probation. The subject Mickey Taylor actually committed said crime. The attorney representing said individual was Mr. Wilson Dinsmore and the prosecutor was Mr. Roger Brown. Upon the plea being entered, the subject Mickey Taylor was placed upon probation. During the period in which the alleged crime was committed by the said Mickey Taylor, the Petitioner was acting undercover from members of the Birmingham Police Department. Upon his arrest, the Petitioner retained the undersigned as his attorney.
 "6. On, to-wit, October 6, 1972, the Petitioner was indicted by the Grand Jury *Page 581 
of Jefferson County in Case Nos. 26107 and 26108 for allegedly selling, furnishing or giving away heroin to an undercover agent of the United Narcotics Detail Operation (UNDO). At said time, the Petitioner was acting undercover for members of the Birmingham Police Department. Upon being arrested, the Defendant obtained the services of Mr. Wilson Dinsmore as his attorney.
 "7. Subsequent to his arrest and release on bail in case nos. 26107 and 26108, the Petitioner while visiting his mother in Atlanta during June, 1972, was contacted by Mr. Wilson Dinsmore, his attorney in the subject drug charges. Mr. Dinsmore by telephone advised the Petitioner that he had a method in which the Petitioner could `hit the streets' and that said Petitioner should immediately return to Birmingham for a meeting. The Petitioner did return to Birmingham and attended a meeting in the office of Mr. Dinsmore in which Mr. Larry Waites and Mr. Roger Brown, members of the District Attorney's Office of the Circuit Court of the Tenth Judicial Circuit, Jefferson County, were present. It was explained to the Petitioner that they (Mr. Waites and Mr. Brown) wanted to `get' the undersigned attorney, Robert R. Bryan, on a criminal charge. They advised the Petitioner that if he could make arrangements for the arrest of the said Robert R. Bryan, they would see that he (Petitioner) would never go to prison.
 "When it was learned during the late fall of 1972 that the aforementioned Robert R. Bryan, who was still appearing as counsel in behalf of the Petitioner in the aforementioned robbery charge, was in no way violating the law and therefore could not be ligitamately [sic] arrested, the said Robert Brown and Larry Waites asked if the Petitioner could take a trip in the airplane of Robert R. Bryan and plant a quantity of narcotics therein. It was explained to the Petitioner that if he could make arrangements to plant narcotics both in the subject attorney's airplane and residence, that a conviction could most likely be obtained for possession of narcotics. The Petitioner went along with the suggestions of the subject representative of the District Attorney's Office and his attorney on the two drug cases, Mr. Wilson Dinsmore, leading them to believe that he was willing to cooperate.
 "8. During the early portion of 1973, the Petitioner advised the undersigned attorney of the aforementioned illegal conspiracy, and that what had possibly begun as a ligitimate [sic] investigation evolved into a very concerted effort to frame said attorney. Evidentally [sic] Mr. Waites, Mr. Brown and Mr. Dinsmore became suspicious of the Petitioner's willingness to cooperate in their improper plan. Thus, the Petitioner was subjected to a polograph examination in the law office of Mr. Dinsmore with Mr. Waites being present. Sometime thereafter Mr. Dinsmore went off the bonds previously posted in behalf of the Petitioner in Case Nos. 26107 and 26108, and the Petitioner was incarcerated in the Jefferson County Jail. On, to-wit, August 9, 1973, bail was posted in behalf of the Petitioner through arrangements made by the undersigned attorney. Additionally, the undersigned attorney agreed to also represent the Petitioner on the subject cases.
 "9. It is apparant [sic] that by the unwillingness of the Petitioner to cooperate with the illegal conspiracy of the Respondents, Mr. Roger Brown and Mr. Larry Waites, the subject individuals have instituted a person [sic] vendita [sic] against the Petitioner, thus depriving him the rights guaranteed by the Constitution and laws of the United States. As evidence of such, a recommendation was made by the Chief Investigating Officer that the robbery charge presently pending, (Case No. 25671) should be dismissed. Said recommendation has been rejected by the Respondent, Mr. Roger Brown."
Bryan signed the petition as attorney and James Allen Brown signed a Verification.
The petition and the federal judge's order were offered into evidence by plaintiffs as *Page 582 
plaintiffs' exhibit one. Defense counsel objected to that part of exhibit one which constituted the judge's order on the grounds that it was irrelevant and prejudicial, which objection was overruled, and exhibit one was received in evidence. Suffice it to state here that the district court's order found that the allegations of the petition "could not conceivably constitute a basis for removal pursuant to 28 U.S.C. § 1443," and remanded the cases to the Circuit Court of Jefferson County.
Bryan testified that he filed the petition under Title 28, § 1443 of the United States Code. That statute allows removal to a federal district court a criminal prosecution pending against "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States . . . ." According to Bryan, the petition was filed under the Fourteenth Amendment. Bryan stated that he relied upon research he had done while assisting in preparing a similar removal petition in another state, and also upon his examination of the face of the removal statute itself, together with a book of criminal forms. He did not read any case law on the Fourteenth Amendment and did not have time to read the annotations contained in 28 United States Code, Section 1443. He identified Georgia v. Rachel,384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925, decided in 1966, as contained therein and available in 1973, and read into evidence a portion of the opinion, viz.:
 "On the basic [sic] of the historical material that is available, we conclude that the phrase `any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality."
He read into evidence a further statement of the U.S. Supreme Court holding that removal under Section 1443 was not permissible under a claimed Fourteenth Amendment right, but necessitated "specific language of racial equality." He added: "[b]ut they didn't say you couldn't try it."
According to Bryan, he spent many sleepless nights before deciding what to do. He was not familiar with the cases ofMiller v. Wade, 420 F.2d 489 and Peacock v. City of Greenwood,347 F.2d 679, decided by the Fifth Circuit Court of Appeals in 1969 and 1965, respectively, which applied Rachel. He would have filed this petition if he had known of Rachel and Miller
because Greenwood was a close case with four judges dissenting, and he was doing everything he could for his client. He had told his client in April, 1975 that he never heard of one of these petitions being granted and the order would probably be against him. He wanted this clearly understood by his client to be sure he would be willing to go forward because "I was putting myself out on a limb" and wasn't "going to make any friends doing this."
Bryan further testified that he had stated to plaintiffs' counsel in April, 1975 that if he were convinced that the removal statute applied only to racially discriminating situations, then his filing (the petition) would be improper, but he added that "if there was a chance to change the law on appeal or a chance that a Court might grant relief" he would have filed the petition. Even so, he did not appeal Judge Allgood's remanding order.
After the district attorney had referred to the petitioner's charges as "a damnable, reprehensible, contemptible lie," Bryan filed suit against Morgan (the district attorney), Waites and Roger Brown after they had sued him, and later allowed these suits to be dismissed. He first testified that he had been given the right to amend and deliberately did not do so, but later testified that he did file an amendment to the suit. Newspaper articles containing recitals of the charges made in the petition were admitted into evidence, as were copies of theRachel and Miller decisions, and a copy of Title 28, Section 1443 of the United States Code.
According to Bryan, Waites, Roger Brown and he tried cases against one another as adversaries. *Page 583 
He furnished a copy of the petition to David Rockwell, a newspaper reporter who wrote the article introduced as exhibit two. He testified that he did not make the initial overtures to Rockwell, but conceded that during the earlier proceedings in Judge Crowder's Court he had made an erroneous statement concerning whether he had given the press any indication of the petition, maintaining that his client had contacted the newspaper and he, Bryan, had given the reporter the copy after the petition had been filed.
We do not find it necessary to consider all of the issues raised in their briefs by appellants, because we have determined that the case must be reversed. Appellants urge us to hold erroneous the trial court's charge on the presumption of malice and the recovery of punitive damages, contending that proof of actual injury is affirmatively required in defamation cases, absent actual malice. Their objections to the Court's charge sufficiently preserved these questions for our review.
Prior to the decision of the United States Supreme Court inNew York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710,11 L.Ed.2d 686 (1964), it was the law of Alabama that a "libel per se," that is, one charging a malicious imputation of crime or moral delinquency, was "actionable per se," malice being implied and damage to the reputation being presumed without the necessity of proof. Marion v. Davis, 217 Ala. 16, 114 So. 357
(1927); Tidmore v. Mills, 33 Ala. App. 243, 32 So.2d 769 (1947). The Sullivan decision, however, ingrafted a federal constitutional limitation on the presumption of malice in cases wherein a public officer charged a libel against him relating to his official conduct. Under it he cannot recover damages unless he proves that the statement was made with "actual malice," i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." Sullivan,supra, 376 U.S. at page 279, 84 S.Ct. at page 726. FollowingSullivan the United States Supreme Court decided Gertz v.Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789
(1974), a diversity libel action brought by a private individual against a magazine publisher. Because the magazine article in question was libel per se in Illinois, the trial court put the case to the jury only on the issue of damages which they awarded. Later the Court entered judgment N.O.V. for the publisher on the theory that the Sullivan doctrine protected discussion (and thus prevented recovery) "of any public issue without regard to the status of a person defamed therein." In the appeal to the Court of Appeals, that Court held the Sullivan doctrine applicable to any publication about an issue of significant public interest, and further held that the position of the defamed person made no difference on the question of that application. The United States Supreme Court, after comparing the media's First Amendment right with the states' legitimate interest in compensating the private individual for the harm caused by defamation, held that:
 ". . . [s]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. . . . But this countervailing state interest extends no further than compensation for actual injury. . . . [W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."
And further:
 ". . . [t]he doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact. More to the point, the States have no substantial interest in securing for plaintiffs . . . gratuitous awards of money damages far in excess of any actual injury."
Although Gertz was a libel action brought by a private individual against a "publisher" in the narrow sense, nevertheless the holding in that case, so directly *Page 584 
involving the breadth of the First Amendment to the United States Constitution, is applicable to the facts of the instant case insofar as it affects the right of our state to award damages in defamation actions. Here, there was entirely absent any proof of actual injury to these plaintiffs. Nor was the jury instructed upon the requirement of actual malice as a predicate to the award of punitive damages. The failure to instruct the jury on the requirement of proof of actual malice for an award of punitive damages and the instruction authorizing compensatory damages absent proof of actual injury, constituted reversible errors.
Appreciating the vital role which judicial restraint occupies in our legal processes, nevertheless we feel constrained to express our considered regret for the circumstances which resulted in these proceedings. Certainly, we members of the legal profession can be esteemed by the public whom we serve no higher than we esteem ourselves. Beyond this expression of our regret we say no more.
For the errors we have noted the cases are due to be, and are
REVERSED AND REMANDED.
HEFLIN, C.J., and MADDOX, JONES and SHORES, JJ., concur.