Of the numerous issues presented to this Court for our review in these cases, we find the trial court's oral jury charge that damages are presumed where there is slander per se to be determinative; therefore, we do not find it necessary to consider all of the issues raised by the appellants because we have determined that the cases must be reversed.
On January 8, 1978, Raymond Evans (plaintiff below and appellee/cross-appellant in this proceeding), instituted an action against Beneficial Management Corporation (hereinafter "BMC"), Beneficial Finance Company of Alabama (hereinafter "BFC") and W. James Murphy, an officer of both BMC and BFC, all defendants below and appellants before this Court, in the circuit court of Jefferson County. Evans alleged that the appellants had maliciously slandered him by making false statements to third parties accusing him of accepting "kickbacks." Evans made other allegations as well.
In response, BFC, BMC and Murphy filed answers denying Evans's claims. In their answers, BMC and BFC asserted counterclaims against Evans for breach of his fiduciary duty and violation of his employment contract.
The trial was long and involved, lasting approximately seven weeks. Thirty or more witnesses appeared on behalf of the appellants and appellee and over seventy exhibits were admitted into evidence for the jury's review. The record totaled more than 3,800 pages.
Prior to submitting the case to the jury, the trial court granted directed verdicts in favor of BMC and BFC on the breach of privacy and infliction of emotional distress counts, leaving Murphy as the sole defendant on these two counts. The court then instructed the jury on the law and the verdict forms to be submitted on Evans's claims and BMC's and BFC's counterclaim. Although no objection was raised by BMC, BFC or Murphy as to verdict forms, timely exception was made to the trial court's instruction on applicable law, including the law concerning slander per se and slander per quod.
The day after the case was submitted to the jury for consideration, the jury sought additional instructions from the trial court by sending the following question to the trial judge: "Can we find for Mr. Evans in one suit and find for Beneficial in the counterclaim without being contradictory"? The trial judge replied: "Such results — such findings would not be contradictory." BMC, BFC and Murphy made exception to the court's response. After nearly two days of consideration, the jury rendered the following verdicts: *Page 94 
1. Slander claim verdict for Evans and against Murphy for $2,700 compensatory and $20,000 punitive.
2. Slander claim verdict for Evans against BFC for $2,800 compensatory and $20,000 punitive.
3. Slander claim verdict for Evans and against BMC for $5,400 compensatory and $40,000 punitive.
4. Invasion of privacy verdict for Evans and against Murphy for $500 compensatory and $500 punitive.
5. Willful infliction of emotional distress verdict for Evans and against Murphy for $5,000 compensatory and $22,500 punitive.
6. Counterclaim verdict against Evans in favor of BMC and BFC for $55,000, compensatory only.
The trial court accepted each verdict as to the validity, but after deliberations with counsel, decided to submit a second verdict form for the limited purpose of ensuring that the jury had not allowed a double recovery for the same injuries. The court's reasoning was that since the damages claimed for the acts of slander and other counts were similar, there existed a possibility that the jury permitted a double recovery. To this end, the trial court admonished the jury against a double recovery and resubmitted one verdict form for slander against BMC, BFC and Murphy together, asking the jury to total the damages suffered by Evans. The jury returned a verdict against BMC, BFC and Murphy for compensatory damages in the amount of $5,400 and $80,000 punitive damages. This represented a sum of punitive damages equal to the total awarded by the jury against the appellants initially and $5,500 less in compensatory damages than the amount awarded against all three appellants separately.
The trial court also resubmitted the infliction of distress and invasion of privacy claims on one verdict form and requested the jury to indicate the total damages suffered. The jury awarded $5,500 in compensatory damages and $23,000 in punitive damages, the identical amount of damages rendered on these counts through separate verdicts.
BMC, BFC and Murphy filed separate written motions for judgment notwithstanding the verdicts, or in the alternative, for new trial. The trial court overruled these motions. The defendants appeal from the judgments entered and from the trial court's order denying their motions for J.N.O.V. or, in the alternative, for new trial. Evans cross-appeals from the judgment entered against him.
 I The Pre-Gertz Standard
In defamation actions, the traditional rule concerning the publication of matters either libelous or actionable per se has been that the law infers some damage. Berryman, Sutherland's ATreatise on Damages, § 10 at 37 (4th ed. 1916). As for verbal accusations that were considered actionable per se, the widely accepted notion was:
 "Certain vocal utterances are actionable per se; an action will lie for them without an allegation or proof of actual damage because it is legally presumed
that they cause injury as a natural and immediate consequence. Other utterances of a defamatory tendency are not so obviously injurious that injury is presumed. . . ." [Emphasis added.]
Id. § 1024 at 4501.
This Court adopted this conclusion early, stating that "injury is presumed to ensue [from false and nonprivileged publication] as the direct product of the publication, and affords ground for the allowance of at least nominal damages."Advertiser Company v. Jones, 169 Ala. 196, 205, 53 So. 759
(1910). We have frequently reiterated the doctrine of presumed damages in defamation cases that were actionable per se. Starksv. Comer, 190 Ala. 245, 254, 67 So. 440 (1914); Comer v.Advertiser Co., 201 Ala. 159, 160, 77 So. 685 (1918); JohnsonPublishing Co. v. Davis, 271 Ala. 474, 487, 124 So.2d 441
(1960); General Electric Credit Corp. v. Alford Assoc.,374 So.2d 1316, 1321 (Ala. *Page 95 
1979)[1]. A distinction was made between per se actions, where damages were presumed, and per quod actions, where special damages must be proved, in Marion v. Davis, 217 Ala. 16,114 So. 357 (1927). The Court elaborated:
 "In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se. While to constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude. Ex parte West (Re: Peinhardt v. West) supra [217 Ala. 14, 115 So. 88]; Rice v. Simmons, supra [2 Har. (Del.) 417]; 36 C.J. 1152, § 19; 17 R.C.L. pp. 263, 264, §§ 3 and 4.
 "This distinction, however, does not deny the right to maintain an action for slander founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor. In such case the law pronounces the words actionable per quod only, and the plaintiff must allege and prove special damages as an element of the cause of action. 17 R.C.L. p. 264, § 4."
217 Ala. at 18, 114 So. 357.
Thus, if a person was slandered by another and the statements constituted slander per se, that person was entitled by law to collect at least nominal damages without proof of damage to reputation.
 II The Gertz Standard
The case of Gertz v. Robert Welch, Inc., 418 U.S. 323,94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), recast the law of defamation relating to libel actions brought by private individuals against publishers. The United States Supreme Court, desirous that the states retain "substantial latitude in their efforts to enforce a real remedy for defamatory falsehood injurious to the reputation of a private individual," ruled that application of the "actual malice" test, as defined in New York Times Co.v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and proposed in Rosenbloom v. Metromedia, Inc., 403 U.S. 29,91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), "would abridge this legitimate state interest to a degree we find unacceptable."Gertz, supra, 418 U.S. at 346, 94 S.Ct. at 3010. In granting the states this latitude in formulating an appropriate standard to protect the reputation of private individuals, the United States Supreme Court has made clear the extent of this latitude and this Court is so bound. The appropriate portion of theGertz decision reads:
 "The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.
 "We would not, of course, invalidate state law simply because we doubt its wisdom, but here we are attempting to *Page 96 
reconcile state law with a competing interest grounded in the constitutional command of the First Amendment. It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." [Emphasis added.]
418 U.S. at 349-350, 94 S.Ct. at 3011-12.
We adhere to the so-called "Gertz rule" and have extended its application to those suits involving private individuals exclusively. Bryan v. Brown, 339 So.2d 577 (Ala. 1976). InBryan, this Court held:
 "Although Gertz was a libel action brought by a private individual against a `publisher' in the narrow sense, nevertheless the holding in that case, so directly involving the breadth of the First Amendment to the United States Constitution, is applicable to the facts of the instant case insofar as it affects the right of our state to award damages in defamation actions. . . ."
339 So.2d at 583-584.
This Court has decided that the Gertz rule shall apply to non-media defendants; therefore, since Gertz abolishes the notion of "presumed damages" and limits compensation in defamation cases which are actionable per se to recovery for actual injuries only, we hereby recognize this to be the law of Alabama. Although in Gertz the Court does not define the concept of "actual injury," deferring instead to the experience of the trial courts in "framing appropriate jury instructions" in this kind of tort action, Gertz, supra, 418 U.S. at 350,94 S.Ct. at 3012, the Court nonetheless makes unmistakably clear that in defamation cases, the "juries must be limited byappropriate instructions." [Emphasis added.] This is the fatal flaw which necessitates our ordering a new trial in the present case.
 III Erroneous Instructions
The appellants in this case made a motion for J.N.O.V. or, in the alternative, new trial, which was overruled by the trial court. A strong presumption of correctness attaches to a trial court's ruling on a motion for new trial. Shiloh ConstructionCompany, Inc. v. Mercury Construction Corporation,392 So.2d 809, 814 (Ala. 1981). But, where it appears from the record that an erroneous charge is given the jury, a new trial is required. J.F. Holley Const. Co. v. Brown Service Funeral HomesCo., 277 Ala. 251, 254, 168 So.2d 621 (1964). The oral charge given by the trial judge in this case appears in the record as follows:
 "Now, if you are reasonably satisfied from the evidence that a defendant slandered plaintiff, as claimed in this action, and the slander was slander per se, then the law presumes damage to the plaintiff's reputation, and you may award the plaintiff such sum of compensatory damages as would, in your discretion, be reasonable to compensate him, the plaintiff, for damage to his reputation." (Emphasis added.)
The legal principle stated in this paragraph, though a single paragraph of a 25-page oral charge,[2] is patently unconstitutional *Page 97 
in view of the explicit directions of Gertz; therefore, we must overrule the trial court in this instance. While appellee Evans contends that these instructions were cured by the trial court's charges to the jury following the jury's return of the initial verdicts and the reinstruction of the trial court to avoid the possibility of any double recovery, see Alabama Power Company v.Smith, 273 Ala. 509, 524, 142 So.2d 228 (1962), the trial court's original charge was such a gross misstatement of the Gertz
standard of defamation as to constitute reversible error.
 IV Reservation of Error
Rule 51 of the Alabama Rules of Civil Procedure reads in part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
A party waives any possible error as to a trial court's oral charge by failing to specifically object and to state grounds for the objection. See Great Atl. Pac. Tea Co., Inc. v.Sealy, 374 So.2d 877, 882-883 (Ala. 1979). Appellants made the following exception to the trial judge's charge of slander per se and presumed damages:
 "In addition to excepting to Your Honor's charge for failure to tell the jury that whether it would be slander per se or slander per quod, plaintiff must reasonably satisfy the jury that he sustained some actual damage, in either case. And I rest my request in excepting to your charge on that in the case of Bryan v. Brown and Gertz, which is a United States Supreme Court case.
 "I think further that the constitutional law required in order to recover for slander, be it slander per se or slander per quod, that the plaintiff bear the burden and he must satisfy the jury from the evidence that he sustained some actual damages."
Appellant properly preserved this portion of the trial court's oral charge for our review by specifically objecting to the "presumption of damage" language in the slander per se charge by stating as grounds for the objection this Court's decision in Bryan and the United States Supreme Court case of Gertz
requiring actual injury.
 V A New Trial on All Issues
Rule 59 (a)(1) of the Alabama Rules of Civil Procedure permits a trial court to grant a new trial as to all or any of the parties on all of the issues in an action in which there has been a trial by jury. A trial court, however, may not separate claims within a cause that has been tried before a jury. Therefore, when a trial court grants a motion for new trial, it must, under the mandate of Rule 59, grant a new trial on the entire cause. Nina Development Corp. v. Jefferson Co.,387 So.2d 180, 182 (Ala. 1980). This Court is not bound by such limits. In Zemczonek v. McElroy, 264 Ala. 258, 86 So.2d 824
(1956), this Court explained its authority to order a new trial.
 "We have held that when a decision on a case as to one appellee is not affected by the decision as to the other, a joint judgment may be reversed as to one appellee and affirmed as to the other. Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223; Sovereign Camp, W.O.W. v. Davis, 242 Ala. 235, 5 So.2d 480. However, we are of the opinion that in the instant case the ends of justice will be best subserved by the reversal and vacation of the judgment in its entirety *Page 98 
so that the cause may be retried. Luquire Ins. Co. v. Parker, 241 Ala. 621, 4 So.2d 259; St. Paul Fire Marine Ins. Co. v. Johnson, 256 Ala. 690, 57 So.2d 80."
264 Ala. at 263, 86 So.2d 824; Park Supply Company, Inc. v.Sunki, 386 So.2d 462, 465 (Ala.Civ.App. 1980).
The Court does not take pleasure in sending this case back for a new trial, especially considering the duration of the original trial; however, since we feel that the issues in this case are interrelated, thereby complicating our separation of them, we believe justice will be best served by a reversal and retrial of the case in its entirety.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974), and Bryan v. Brown, 339 So.2d 577 (Ala. 1976), were not applicable in this case because GECC failed to defend the libel count on the theory of these cases.
[2] This charge appears in the volume, Alabama Pattern Jury Instructions-Civil, which was sent to the publisher prior to the Supreme Court's delivery of the Gertz decision in 1974, and this Court adopted the Gertz holding in Bryan in 1976. Also, we point out the following admonition which prefaces the order of the Supreme Court of Alabama approving use of Alabama Pattern Jury Instructions: "While these instructions appear to be accurate and appropriate to the subjects to which they relate, they are to be considered as patterns only and should be altered or changed as circumstances indicate." Alabama Pattern Jury Instructions — Civil, at X.