David T. "Tommy" Watts, appellee, worked for Prudential Insurance Company in its Tuscaloosa, Alabama office for several years. In August 1981 Tommy resigned his position as an agent with Prudential and went to work for Bankers Life Insurance Company. Watts did not leave Prudential on friendly terms. On the night that Watts informed Buffo, an employee of Prudential, that he was leaving Prudential, Buffo accused Watts of stealing files from Prudential. Later Buffo held up Watts's final paycheck. Also, Watts and Buffo were now business rivals. Buffo worked for Prudential and Watts worked for Bankers Life.
As an agent for Bankers, Tommy called upon some people to whom he had sold Prudential policies. According to the record, as Tommy sold adjustable life to his clients and friends, some of them cancelled their whole life policies with Prudential. In each instance of "replacing" an existing policy with a Bankers Life policy, Tommy complied with the requirements of the state of Alabama. Moreover, appropriate forms were filled out and Prudential received notice that the existing insurance was being replaced.
When replacement notices came to Prudential, Mr. Buffo contacted some people by phone, and assigned one of his agents, *Page 312 
Elaine Katz, to talk to other policyholders in an effort to persuade them to keep their Prudential policies.
Tommy called eight people who testified they were contacted either by Ron Buffo or by Elaine Katz and were told various things about their policies and about Mr. Watts. Some of these people stated that they were merely told that Tommy did not fully explain the difference between the Prudential and Bankers policies, that they did not know what they were getting, or that the Prudential policy was better than the Bankers policy. Others stated that they were told that Tommy Watts was doing this for his own interest and not the interest of his clients and that he was doing this to collect first year commissions. Three of these people testified that Ron Buffo told them that what Tommy Watts was doing was unethical.
All the people who testified about being called by either Ron Buffo or Elaine Katz stated that they still had confidence in Tommy Watts and that they had either bought additional insurance from Tommy or that they would buy additional insurance from him. Mr. Watts, however, testified that on occasions he had been "kidded" in public about Prudential's accusations. Moreover, some of his own clients stated in public that "they had a crook for an insurance agent."
Mr. Watts filed a complaint against Prudential Insurance Company and Ron Buffo on May 31, 1982 for tortious interference with his right to do business, for slander, and for outrageous conduct as a result of their statements.
Defendants answered by denying the allegations, and Prudential counterclaimed by alleging that Watts had converted confidential records. Watts denied these allegations.
Defendants requested a summary judgment and in support of it submitted the deposition of Ronald Buffo and the affidavit of Hugh Easterwood, an employee of the Alabama Insurance Department. Watts objected to the granting of summary judgment and filed the deposition of Tommy Watts and an affidavit of Jack Drake, Watts's attorney. Summary judgment denied.
Plaintiff dismissed count three of his complaint and revised count two, the slander count. Defendants answered the amended complaint by alleging a qualified privilege. The case proceeded to trial before the court and a jury on counts one and two. At the conclusion of plaintiff's case in chief, he dismissed count one. Defendants' request for a directed verdict as to count two was denied. The jury returned a verdict in favor of Watts in the amount of $3,000 as compensatory damages and $7,000 as punitive damages. Defendants asked for a judgment n.o.v., which was denied, and they appeal.
Defendants' first contention on appeal is that the trial court erred in refusing to grant summary judgment in their favor. We disagree. It is well-settled law that if there is a scintilla of evidence supporting the position of the party against whom the motion is made summary judgment cannot be granted. Missildine v. Avondale Mills, Inc., 415 So.2d 1040
(Ala. 1981); Alabama Rules of Civil Procedure 56. The pleadings, depositions, and affidavits filed both for and against summary judgment established a genuine issue of material fact. The trial court properly overruled the motion for summary judgment. As noted above, the trial court had before it the depositions of Watts and Buffo, yet only portions of those depositions appear in the record filed in this court. Where the trial court considered evidence that is not before the appellate court, the trial court's judgment is presumed supported by the evidence heard by it. Livengood v. Sechler,382 So.2d 567 (Ala.Civ.App. 1980).
Defendants next say that the trial court erred in overruling their motions for directed verdict and judgment n.o.v. because their remarks were qualifiedly privileged. The trial court did instruct the jury that a qualified or conditional privilege did exist in favor of the defendants as a matter of *Page 313 
law. Also, Watts made no objection to this instruction.
Therefore, in order for the conditionally privileged statements to be actionable, the evidence must show that actual malice exists. Kenney v. Gurley, 208 Ala. 623, 95 So. 34
(1923).
A motion for a directed verdict is properly overruled when there exists a scintilla of evidence in favor of the nonmoving party. Feaster v. American Liberty Insurance Co., 410 So.2d 399
(Ala. 1982). Likewise, a motion for a judgment n.o.v. is properly overruled where there is a scintilla of evidence in favor of the nonmoving party. Ritch v. Waldrop, 428 So.2d 1
(Ala. 1982).
In Alabama slanderous statements are considered malicious if they were made with knowledge that they are false or made with reckless disregard of whether they are false. Lewis v. Ritch,417 So.2d 210 (Ala.Civ.App. 1982). There is sufficient evidence in the record from which the jury could have concluded that Prudential's employees knew their statements about Watts were false. Therefore, the trial court properly overruled defendants' motions for directed verdict and for judgment n.o.v.
Prudential's last contention on appeal is that there was no evidence at trial of any damage to Mr. Watts.
The supreme court in Beneficial Management Corp. v. Evans,421 So.2d 92 (Ala. 1982), in summarizing current Alabama law regarding slander, stated that Alabama would follow Gertz v.Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789
(1974). Evans and Gertz both dealt with slander of private figures.
Gertz, supra, holds that private figures may recover only for actual damages suffered in all defamation cases. The Gertz
court further noted:
 "We need not define `actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss.
Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." (Emphasis added.)
Apparently then, in Alabama, all defamation cases brought by private individuals require a showing of actual damages by the plaintiff in order for him to collect compensatory damages. However, as noted in Gertz, supra, in establishing actual damages, plaintiff is not limited to out-of-pocket loss but may show mental anguish and other traditional tort measures of actual damages. We find that the record is replete with evidence from which the jury could conclude that the statements made by Prudential were embarrassing and humiliating, and caused Mr. Watts mental suffering. Therefore, we hold that the $3,000 compensatory damages awarded to Mr. Watts was not erroneous.
Moreover, as a private individual, a plaintiff may recover punitive damages for statements made with actual malice. Alabama courts have noted that if compensatory damages are found the plaintiff may recover punitive damages as well through the showing of actual malice. Bryan v. Brown,339 So.2d 577 (Ala. 1976). Malice may be shown by the knowledge that the statement is false. Lewis v. Ritch, supra.
Actual malice "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, . . . or by the violence of the defendant's language, the mode and extent of publication, and the like." Kenney, supra. There is evidence in the record of ill will and hostility between Buffo and Watts; there is also evidence of intense rivalry between Buffo and Watts, and that the slanderous statements *Page 314 
made about Watts were extensively published. Moreover, the evidence was such that the jury could infer that the statements made about Watts were false and, therefore, were made with malice.
We find the evidence supports the award of punitive damages.
AFFIRMED.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.
 On Rehearing