CRAWLEY, Judge.
This is the third appeal involving property jointly owned by Leo Harold Eason (“the brother”) and Mary Ellen Eason (“the sister”). See Eason v. Bynon, 781 So.2d 238 (Ala.Civ.App.2000)(“Eason I”), and Eason v. Bynon, 845 So.2d 817 (Ala. Civ.App.2002) (“Eason II”). In this appeal, the sister, as administratrix of the brother’s estate, appeals from the circuit court’s denial of a Rule 60(b), Ala. R. Civ. P., motion seeking relief from a December 2, 1999, judgment in favor of Robert P. Bynon, Jr. We affirm.
The relevant facts were set out in our previous opinions as follows:
“Mary Ellen Eason lives in the home place that she, her brother Leo, and her *652 sister Elizabeth Eason Hardiman inherited from their parents. Ms. Eason is 75 years old; she has a ninth-grade education. Her brother Leo (who is now deceased) had a third-grade education and could not read or write.
“In 1988, Leo was charged with murder. Bynon, a lawyer, agreed with Leo to defend him in the criminal prosecution for a fee of $25,000. Leo agreed to sign a $25,000 note, to be secured by a real-estate mortgage on the home place he owned with his sisters. At trial, By-non introduced a note and a mortgage, dated December 7, 1988, both purportedly signed by Mary Ellen Eason and Leo Eason and acknowledged by Shirley A. Franklin, a notary public.
“Ms. Eason testified that, on December 7, 1988, Bynon came to her home and drove her to the county jail, telling her that they were going to ‘get [her brother] out on bond.’ According to Ms. Eason, four people were present on that occasion: Ms. Eason; her brother Leo; Bynon; and the bail bondsman, a Mr. King. She testified that Bynon handed the bondsman $1000 and then had her and her brother sign some papers that Bynon said were ‘bond papers.’ Ms. Eason testified that Bynon did not tell her she was signing a note and a mortgage. She said that she ‘didn’t even know what a mortgage note [was].’ She admitted that she did not read the documents before signing them. At trial, Ms. Eason was shown a copy of the note and the mortgage, and she acknowledged that the signatures were hers. However, she denied knowing the contents of the documents, denied signing them before a notary, and denied talking to anyone named ‘Shirley A. Franklin.’
“Bynon testified that Shirley A. Franklin was his secretary in 1988, that she was a notary, and that her acknowledgment appears on the note and the mortgage. When he was asked whether Ms. Franklin was present at the jail when the mortgage was executed, Bynon replied, ‘I don’t recall where that was signed.’ Bynon also did not recall who was present at the signing of the documents. When confronted with Ms. Ea-son’s testimony that she had ‘never signed any documents before a notary public,’ Bynon responded that he had ‘never lied to anybody while [he had] been practicing law.’ ”
Eason I, 781 So.2d at 239-40.
“In Eason I, Bynon had sued [Mary Ellen Eason and Leo] Eason, seeking, among other things, a reformation of the mortgage to correct the legal description of the real property in which Ms. Eason, her brother, and her sister had an interest. Ms. Eason asserted the defense that the mortgage was invalid because of Bynon’s fraud and the notary’s violation of her legal duty. Ms. Eason demanded a jury trial. The trial court struck the jury demand and eventually entered a judgment reforming the mortgage.
“Ms. Eason appealed; this court reversed, concluding that the trial court had erred by striking the jury demand. We stated that, although Bynon had requested equitable relief, for which a jury trial was not available, Ms. Eason had asserted a legal defense for which she had the right to a trial by jury. We held: ‘[T]he resolution of the equitable issue (whether the trial court should reform the legal description in the mortgage) was necessarily dependent on the resolution of the legal issue (whether the mortgage was valid).’ 781 So.2d at 241.”
Eason II, 845 So.2d at 819.
After our reversal in Eason I, Bynon moved for, and the circuit court entered, a judgment on the pleadings against the brother because, the circuit court held, *653 the brother had neither demanded a jury trial nor appealed from the circuit court’s judgment reforming the mortgage.[1] The sister moved for leave to amend her original pleadings to assert a counterclaim against Bynon. The proposed counterclaim alleged fraud and sought $100,000 in compensatory damages and $100,000 in punitive damages. Thereafter, Bynon dismissed his claim against the sister, and the circuit court denied the sister’s motion for leave to add a counterclaim.
The brother died on May 9, 2000. Counsel entered a postjudgment appearance for the sister, as administratrix of the brother’s estate, and moved to alter, amend, or vacate the December 2, 1999, judgment as to the brother, asserting that Bynon’s action against the brother should be dismissed, pursuant to Rule 25(a)(1), Ala. R. Civ. P. The motion alleged that, on July 11, 2000, the sister had filed on the record a suggestion of the brother’s death and that Bynon had not filed within six months of the filing of the suggestion of death a motion to substitute the proper party; therefore, she maintained, Bynon’s action against the brother should be dismissed. The administratrix also argued that the circuit court had erroneously reformed the mortgage because, she claimed, the mortgage was invalid.[2] The circuit court denied the sister’s postjudgment motion and the sister (individually — not as administratrix of her brother’s estate) appealed, raising three issues: (1) that the judgment on the pleadings for Bynon was an attempt to circumvent this court’s holding in Eason I; (2) that the failure to dismiss Bynon’s action against the brother violated Rule 25(a)(1), Ala. R. Civ. P.; and (3) that the circuit court abused its discretion by denying her motion to be allowed to file a counterclaim pursuant to Rule 13(f), Ala. R. Civ. P.
In Eason II, this court affirmed the circuit court’s judgment. We held: (1) that, because the brother had neither demanded a jury trial nor appealed the circuit court’s judgment reforming the mortgage, the holding in Eason I had no application to the brother’s interest in the property; (2) that the trial court had not erred by failing to dismiss the action against the brother because a proper suggestion of death had not been filed; and (3) that the trial court had not abused its discretion by denying the sister’s motion seeking to be allowed to file a counterclaim.
After the release of our opinion in Ea-son II, the sister, as administratrix of the brother’s estate, filed a motion pursuant to Rule 60(b), Ala. R. Civ. P., seeking relief from the December 2, 1999, judgment against the brother — a judgment that reformed the mortgage to correct the legal description of the real property in which the brother had an interest. The Rule 60(b) motion alleged: (1) that the brother had a good defense to Bynon’s action to reform the mortgage; (2) that the circuit court erred by entering a judgment on the pleadings in favor of Bynon and against the brother because the brother was not served with written notice of the application for the judgment at least three days before the hearing; and (3) that, under the “rule of entirety,” this court’s reversal of the judgment as to the sister’s interest in *654 the property that is the, subject of the mortgage also required a reversal of the judgment as to the brother’s interest in the property, notwithstanding the fact that neither the brother nor his estate had appealed from the judgment.
The first ground for the sister’s Rule 60(b) motion — that the brother had a good defense to Bynon’s reformation action— while a necessary allegation in a motion to set aside a default judgment under Rule 55(c), Ala. R. Civ. P., see Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala.1988), is not determinative in a Rule 60(b) motion. The second ground — that the brother was not served with written notice of the application for the judgment on the pleadings at least three days before the hearing — does not state a basis for relief under Rule 60(b). There is no requirement that a party be given three days’ notice of the entry of a judgment on the pleadings. Compare Rule 55(b)(2), Ala. R. Civ. P. (“[i]f the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application” (emphasis added)). The sister’s third ground for the Rule 60(b) motion — that this court’s reversal of the judgment as to her interest in the property required a reversal of the judgment as to her brother’s interest in the property, notwithstanding the brother’s failure to appeal — requires further discussion. The sister’s motion did not specify under which subsection of Rule 60(b) she was seeking relief, but, because the motion was not made within four months of the December 2, 1999, judgment, it could fall- only within subsections (5) or (6). See Rule 60(b); R.E. Chills, Inc. v. Davison, 641 So.2d 225, 229 (Ala.1994). Those subsections state:
“On motion and upon such terms as are just, a court may relieve a party ... from a final judgment ... for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.”
In Glasscock v. Wallace, 488 So.2d 1346 (Ala.1986), a nonappealing defendant sought to take advantage of an appellate court’s reversal of a judgment against his codefendants by moving for relief under Rule 60(b)(6). The procedural history of that case is recounted in Teague v. Glasscock, 456 So.2d 277 (Ala.1984). A former employee of the State Department of Education (“the Department”) sued the Department, the superintendent of the Department, and other state officials, including the Governor, seeking reinstatement and back pay. The circuit court entered a judgment ordering the superintendent and the Department to reinstate the former employee and ordering the Governor to pay him back pay. The superintendent and the Department appealed; the Governor did not appeal. The Alabama Supreme Court reversed the judgment against the superintendent and the Department and remanded the case.
The Governor then filed a Rule 60(b)(6) motion, seeking to have the judgment against him set aside because of the reversal as to the other defendants. After hearing the Governor’s argument that he “ ‘felt that his interests were adequately represented by counsel for [the other defendants], and that a separate appearance on his behalf would be unnecessary,’ ” and that “ ‘counsel for [the] Governor ... was never informed that an appeal had, in fact, been taken,’ ” 488 So.2d at 1347, the eir- *655 cuit court granted the Governor’s motion to set aside the judgment. The Alabama Supreme Court affirmed the circuit court’s decision that “ ‘the Rule 60(b)(6) motion is particularly applicable to this case, and in the interests of justice should be granted.’ ” 488 So.2d at 1348. The former employee appealed from the order granting Rule 60(b) relief in Glasscock v. Wallace, 488 So.2d 1346, 1347 (Ala.1986).
In Glasscock v. Wallace, the supreme court stated the general rule that when a judgment is rendered against more than one party and only one of the parties appeals, the judgment against the nonap-pealing party remains valid despite a reversal of the judgment as to the appealing party. The court then discussed an exception to the general rule:
“ ‘Rule 60(b)(6), [Ala.] R. Civ. P., is an extreme and powerful remedy and should be used only under extraordinary circumstances, and it is not available as a substitute for an appeal. Gallups v. United States Steel Corp., 353 So.2d 1169, 1172 (Ala.Civ.App. 1978). Ordinarily, where a judgment is rendered against two defendants and one appeals, the judgment is valid against the non-appealing party. However, the court finds the following statement at 5B C.J.S. Appeal & Error § 1920 [ (1958) ] informative in this case:
“ ‘ “The rule that reversal on appeal by a party does not justify reversal of nonappealing parties, however, is not invariable, and where the judgment is not severable, or where the rights and interests of the parties are so intermingled and interdependent that reversal in favor of one would injuriously affect the right of his co-parties, the court, if reversal is proper as to appellant, may reverse as to non-appealing parties.”
“ ‘The general rule that a Rule 60(b)(6) motion is not a remedy for failure to take an appeal is not inflexible, and in unusual cases it may afford relief. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2864 (1973).’ ”
Glasscock v. Wallace, 488 So.2d at 1347-48.
Another exception to the rule leaving intact a judgment against a nonappealing party is encompassed in the “rule of entirety.” Citing Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674 (1966), the sister, as administratrix of the brother’s estate, relies upon this rule to argue for a reversal of the judgment concerning the estate’s interest in the property. The “rule of entirety” was based upon the common-law prohibition against splitting an action. In an early Alabama decision, the court explained:
“It is insisted for plaintiff that if this court should reverse the judgment for error against [one defendant], it should be affirmed against [the other defendant], there being no error to his prejudice. Courts of law never split one action into two or more — as would be done in this by the course proposed — and leave one part of it in one court and one in another court. A plaintiff must pursue his one suit against several persons, as he brought it, to its conclusion as a single cause, unless as to some or one of the defendants it is abated, or is otherwise legally discontinued.”
Huckabee v. Nelson, 54 Ala. 12, 15 (1875). Later, in Alabama Power Co. v. King, supra, our supreme court explained that the common-law “rule of entirety” had been modified, but not altogether abandoned:
“At common law a joint judgment was regarded as an entirety, and a reversal of the judgment as to one defendant *656 required a reversal as to all. Some of our earlier cases reflect this rule. This earlier rule of entirety has now been modified to the extent that where a judgment, though joint in form is several in effect, and the interests of the parties are several and independent, then such judgment is not necessarily considered as entire, and such joint judgment may be reversed as to one or more of the defendants and not as to the other.
“This relaxation of the older rule has, however, never been applied where it might work an injustice to one party defendant if the judgment were to be affirmed as to him while reversed as to one or more of the joint defendants. In such case the power exists, in the ends of justice, to reverse the judgment in its entirety.”
280 Ala. at 124-25, 190 So.2d at 679-80 (citations omitted). Generally, Alabama courts have applied the “rule of entirety” to give one defendant the benefit of a reversal obtained by a codefendant in three circumstances: (1) when the issues or claims are intertwined; (2) when it would be unfair to leave one defendant liable for the entire amount of the judgment rendered against both defendants; or (3) when a new trial for one defendant alone could lead to inconsistent judgments. See, e.g., CP & B Enters., Inc. v. Mellert, 762 So.2d 356 (Ala.2000).
In Mellert, an employee sued her employer and a co-employee, alleging that the co-employee had sexually harassed her and that the employer was negligent and wanton in retaining the harassing employee. She also alleged that the employer was vicariously liable for the co-employee’s actions. A jury returned a verdict for the plaintiff against both defendants, awarding her compensatory damages of $25,000 and punitive damages of $250,000. The trial court entered a judgment against the defendants, making each defendant liable for the whole amount awarded by the jury. On appeal, the supreme court reversed the judgment against the employer, holding that the trial court had erred by failing to present the jury with a verdict form that would have allowed it to award punitive damages only against the co-employee. The court further held:
“Because we are reversing the judgment against [the employer], we must also reverse the judgment against [the co-employee]....
“The claims against [the co-employee] and [the employer] are so intertwined as to be inseparable; therefore, our reversal of the judgment against [the employer] necessitates a reversal as to [the co-employee]. It would be unfair to leave one defendant liable for the entire amount of a judgment rendered against both defendants. In addition, a new trial for [the employer] alone could lead to inconsistent judgments.”
Mellert, 762 So.2d at 364-65. See also Alabama Power Co. v. King, 280 Ala. at 124, 190 So.2d at 679 (determining that, when Alabama Power succeeded in obtaining a reversal of a judgment holding two automobile drivers and Alabama Power jointly liable for causing the plaintiffs house to burn as a result of vehicles’ striking a power pole, the two automobile drivers were also entitled to a reversal, despite the fact that they did not argue on appeal the ground made the basis for reversal, because the claims against all three defendants were “so intertwined as to be inseparable”); Beneficial Mgmt. Corp. of America v. Evans, 421 So.2d 92, 98 (Ala.1982)(holding that, in an action submitting to the jury claims of invasion of privacy and infliction of emotional distress against one defendant and claims of slander against two other defendants, a determination that the jury was erroneously *657 charged with respect to the slander claims necessitated a reversal of the judgment against all defendants on all claims because “the issues in this case [were] interrelated, ... [and] justice [would] be best served by a reversal and retrial of the case in its entirety”); Bush v. James T. Johnson & Co., 411 So.2d 139, 142 (Ala.Civ.App.1982)(holding that, when a default judgment was entered against two defendants and a judgment on the merits was entered against the third defendant, a reversal of the default judgments against the first two defendants necessitated a reversal of the judgment against the third defendant because “[t]he relationship between the defendants [was] so intertwined that it would be unjust to affirm the judgment as to the one defendant who appeared and reverse the judgment as to those who failed to appear” and “it would be unfair to leave [the third] defendant liable for the whole amount of th[e] judgment”).
Conversely, Alabama courts have not applied the “rule of entirety” to give one defendant the benefit of a reversal obtained by a codefendant when the interests of the defendants are separate and independent, and it would not be unjust to reverse the judgment as to one and affirm as to another. See, e.g., Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340 (1972) (determining, in an action alleging breach of a real estate sales contract, that a real estate salesperson acting merely as agent for a disclosed principal could not be found personally liable; therefore, the reversal of a judgment against the salesperson did not require a reversal of the judgment against the realtor and the seller); St. Paul Fire & Marine Ins. Co. v. Anderson, 358 So.2d 151, 158-59 (Ala.Civ.App.1977) (holding that, because the soliciting agents for an insurer had no authority to alter the coverage terms of an insurance policy, any misrepresentations as to the extent of coverage by the agents could not be attributed to the insurer; therefore, the reversal of a judgment against the insurer did not require a reversal of the judgment against the agents because “the interests of the parties against whom judgment [was] rendered are several and independent, [and] the joint judgment may be reversed as to one or more of the defendants and not as to all”), reversed on other grounds, Proctor Agency, Inc. v. Anderson, 358 So.2d 164 (Ala.1978); Central Bank v. Boyles, 355 So.2d 98, 102 (Ala.Civ.App.1977)(hold ing that, when a judgment against a bank and other defendants was reversed as to the bank because of improper venue, the other defendants were not entitled to a reversal of the judgment as to them because “[t]he judgment as entered is not entire as to all parties and the interest of [the bank] is largely separate and independent from that of the remaining defendants” and “no substantial injustice results to these defendants as a result of reversing as to [the bank] and affirming as to the remaining defendants”).
In the present case, the interests of the brother and the sister were both separate and interrelated. Their interests were legally separate in the sense that each sibling had a $ interest in the real property that a creditor could levy on separately. Their interests were economically and emotionally interrelated in the sense that any foreclosure and sale as to the brother’s interest could displace the elderly sister from her home place. If this court were to decide that, in the interests of justice, the rule of entirety required a reversal of the judgment against the brother, we would not thereby be “invalidating” the mortgage; we would merely be remanding the cause for a jury trial on the issue of the validity of the mortgage. The problem with that relief is that the brother did not simply fail to demand a jury trial *658 and fail to appeal; he affirmatively objected to a jury trial.[3]
Rule 60(b)(6) relief is not usually available to one who has not sought to “achieve a favorable result before the judgment becomes final.” Patterson v. Hays, 623 So.2d 1142, 1145 (Ala.1993). In Patterson, our supreme court explained the parameters of Rule 60(b)(6):
“[Ujnder Rule 60(b)(6), relief is granted only in those extraordinary and compelling circumstances when the party can show the court sufficient equitable grounds to entitle him to relief, but relief should not be granted to a party who has failed to do everything reasonably within his power to achieve a favorable result before the judgment becomes final; otherwise, a motion for such relief from a final judgment would likely become a mere substitute for appeal and would subvert the principle of finality of judgments. See the Comment to Federal Rule of Civil Procedure 60(b). As the Court held in Nowlin v. Druid City Hosp. Bd., 475 So.2d 469 (Ala.1985), Rule 60 is no substitute for an appeal and is not available to relieve a party from his failure to exercise the right of appeal.”
623 So.2d at 1145.
We conclude that the interests of justice do not require a reversal of the judgment against the brother. The judgment entered against the brother is valid, and the brother’s estate is not entitled to a new trial just because the sister wants a jury trial. The judgment of the circuit court is affirmed.
AFFIRMED.
YATES, P.J., concurs.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur in the result.

. It is unclear why the trial court entered a judgment on the pleadings against the brother when, according to the trial court's reasoning, only that part of the December 2, 1999, judgment that pertained to the sister's interest in the property had been reversed in Eason I. Later in this opinion, we will address the sister's argument that the effect of Eason I was to reverse the entire judgment.

. This court did not address the issue of the validity of the mortgage in Eason I or Eason II. In Eason I, we held only that the sister was entitled to a jury trial on that issue.

. On December 11, 1998, Bynon alleged that he had served the summons and complaint on a correctional facility where the brother was incarcerated; that the warden of the facility had accepted service of process for the brother; and that the warden had informed Bynon that the brother was "incompetent and incapable of understanding the summons and complaint.’' Bynon therefore moved the trial court to appoint a guardian ad litem (“GAL”) for the brother. On January 15, 1999, the sister answered Bynon’s complaint and demanded a jury trial. On January 21, the court appointed a GAL for the brother. On October 26, 1999, the GAL filed an "Objection to Trial by Jury,” specifically requesting that the court place the case on the nonjury docket.