Vernon Carpet Mills, Inc. purchased yarn, which it used to make carpeting, regularly from Rossville Spinning Corporation. During the fall of 1974, Vernon became delinquent in its account to Rossville and owed Rossville some $43,000. In February of 1975, Rossville informed Vernon that the current accounts receivable from Vernon were approximately this amount and that, in addition, Rossville was holding a current inventory of yarn which had been ordered by Vernon, but not shipped, which amounted to some $23,000. By this letter Rossville demanded payment of these past due amounts.
Vernon responded to this demand by letter stating: *Page 1206 
 "Therefore, in an earnest effort to retire this payable, we will begin payment effective the week of February 23, 1975 in amounts of at least $500.00 each week until the account is paid in full. We are confident that payments will exceed this amount, but assure this minimum. The finished goods in inventory will be taken out on a cash basis as soon as it is possible for us to do so."
On March 3, 1975, Vernon Carpet Mills, Inc., Joe H. Nix and Homer W. Pitts executed a note payable to Rossville which provided for the repayment of the principal amount of $43,000 at the rate of $500 per week, and for the removal of the finished goods inventory within a certain period of time.
After approximately two months, this note was in default and Rossville demanded payment. Again, negotiations took place which resulted in the execution of a new note dated May 27, 1975. This note was in the principal amount of $42,759.74, and provided for repayment at the rate of $600 per week, beginning June 3, 1975. The note also provided that if default be made in the payment of any weekly installment when due, or if Vernon failed to remove and fully pay for the finished goods inventory Rossville was currently holding for Vernon's account within fifteen days from the date of the note, the note could be declared immediately due and payable.
This note was signed by Vernon Carpet Mills, Inc., Joe H. Nix and Homer W. Pitts.
Rossville filed suit on the note on September 26, 1975, demanding judgment in the amount of $39,531.47, plus interest at 8% per annum from July 8, 1975, and attorneys' fees.
The defendants filed a general denial on October 23, 1975. Extensive interrogatories were filed by the defendants to Rossville in early January, 1976. Rossville filed an amended complaint on January 15, 1976, which added an additional claim for the same amount due by open account. The defendants filed a general denial to the amended complaint on January 20, 1976.
A pre-trial hearing was held on January 27, 1976, which resulted in a pre-trial order setting out the positions of the parties as follows:
"3. Position of the parties.
 "Plaintiff contends that the Defendants owe the Plaintiff $38,984.34. This is the amount that is due by open account and the amount due by the unpaid balance of the note executed May 27, 1975. Further, all open account payments are guaranteed by Defendants Nix and Pitts. Defendant[s] pleads [sic] the general issue.
"4. Stipulations and Admissions.
 "The Plaintiff stipulates that the amount sued upon in Count One and Count Two should be $38,984.34 rather than $39,531.47. The difference in these two figures came to light after this suit was filed and by the accounting office of the Plaintiff. The Defendants stipulate that Homer C. Pitts and Joe H. Nix executed promissory notes in favor of the Plaintiff on May 27, 1975 and March 3, 1975. Further, Defendants stipulate that the guaranty of payment executed by Pitts on June 15, 1974 and by Defendant Nix on February 8, 1974 were signed by the Defendants as their signatures appear. Parties agree that all written correspondence concerning this suit between Defendants and Plaintiff is admissable.
"5. Discovery.
Discovery is complete.
"6. Additional orders.
None."
The case was set for trial on February 24, 1976.
On February 20, the defendants filed an amended answer setting up, for the first time, a defense of failure of consideration, fraud in the inducement of the note, and that Pitts and Nix signed the note as accommodation-makers for the accommodation of Vernon and that a primary obligor cannot be sued in the same action. By the amended answer, the defendants also asserted a counterclaim claiming damages of $600,000 against the plaintiff for breach of *Page 1207 
contract and $80,000 for fraud and misrepresentation.
The plaintiff filed a motion to strike the amended answer of the defendants, which the court granted on the day of trial.
After a trial on the merits to a jury, the court directed a verdict in favor of the plaintiff. Defendants appeal and argue the following issues:
1. The note was not based upon sufficient consideration, because the debt secured by the note was already matured at the time of the execution;
2. The trial court abused its discretion in refusing to allow the defendants to amend their answer; and
3. The court erred in granting the plaintiff's motion for directed verdict.
The first issue raised by the defendants on appeal goes to the trial court's having granted the plaintiff's motion to strike the amended answer filed by the defendants just four days before the case was set for trial and after a pre-trial order had been entered. This amended answer for the first time raised the defense of failure of consideration and fraud in the inducement of the note. Under these circumstances, we must determine whether the trial court erroneously granted the plaintiff's motion to strike the amendment to the answer. Rule 12, ARCP, like all of the rules, is to be construed liberally to effect the purpose of the rules, stated in Rule 1, ARCP, to assure the ". . . just, speedy and inexpensive determination of every action." Rule 12 should be considered along with the other rules, such as Rule 4, Rule 6, Rule 7, and Rules 8 through 11, and Rule 15, dealing with amendment of pleadings.
Rule 8 (c) requires that affirmative defenses such as failure of consideration and fraud be set forth by the pleader. Rule 12 (a) requires that an answer must be filed within thirty days, and Rule 12 (b) requires that such answer set forth every defense ". . . in law or fact, to a claim for relief" except for specified defenses which may be asserted by motion. Rule 6 (b) permits the court to enlarge the time for serving an answer, and Rule 15, which states a liberal amendment policy, allows a party to add defenses to his responsive pleading which have been mistakenly omitted, or that have become available to the defending party after he has served his pleading, providing it does not prejudice the opposite party. It has been said, however, that it is ". . . advisable for a party to interpose any defenses he has failed to include in his responsive pleading at the earliest opportunity." Wright Miller, Federal Practice and Procedure: Civil § 1348. Rule 15, ARCP, says:
 ". . . a party may amend his pleading without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires. . . ."
Rule 15 is reflective of the policy of the rules to allow the maximum opportunity to state each claim and have it decided on the merits, and dispense with technical requirements so long as the parties are provided with notice of the nature of the pleader's claim or defense. The question is whether the spirit of the rules has been violated by the court's having granted the plaintiff's motion to strike the defendants' amendment to their answer under the circumstances of this case. We think not.
First, it should be noted that the defense of "failure of consideration" was insufficient as a matter of law. The defendants' amendment asserts that there was a failure of consideration because the debt had already matured, and was then due, at the time the note was executed. Forbearance to sue on a due debt is in itself sufficient consideration. AirEngineers, Inc. v. Reese, 283 Ala. 355, 217 So.2d 66 (1969). It is undisputed that the March 3, 1975, note, which had also been executed by all of these defendants, was in default at the time the note sued on was executed. It is also expressly admitted by the defendants that the accounts receivable, which obligation the note was substituted for, *Page 1208 
were due to the payee, Rossville. Rossville was in a position to sue on that obligation at the time the first note was executed; likewise, it was in a position to sue on the first note at the time the second note was substituted therefor.
In the amendment to their answer, the defendants also raised fraud for the first time and asserted a counterclaim based upon fraud, as well as a counterclaim for damages for breach of contract. These claims were also stricken by the trial court. Again, we find no error to reverse. The counterclaims asserted by the amendment are permissive, not compulsory counterclaims. The theory of both counterclaims is that Rossville represented to the defendants that certain yarns would be available to the defendants and they knew at the time these representations were made that such would not be available, and that as a consequence the defendants suffered damages in the conduct of their business. The contract claim is based upon an alleged breach of a contract to supply such yarns. In MinneapolisBrewing Co. v. Merritt, 143 F. Supp. 146 (D.C.N.D. 1956), the plaintiff brought an action on a contract indebtedness. By counterclaim, the defendant asserted that the plaintiff made representations that the plaintiff would secure a buyer for the defendant's business. The defendant claimed that it was damaged as a result of the plaintiff's failure to perform its promise, and by the misrepresentations of the plaintiff. There, the court held that such counterclaim could be asserted as a permissive counterclaim, but was not a compulsory one under Rule 13.
We find that logic persuasive under the facts of this case. The counterclaims were filed just four days before this case was due to be tried. It had been pre-tried and had been on the trial docket for some three weeks at the time the counterclaims were asserted. Although the trial court could have continued the case, allowing the plaintiff time to file responsive pleadings to the counterclaims, we do not think it was compelled to do so. Inasmuch as the counterclaims were not compulsory, the defendants have not been foreclosed from asserting these claims by way of independent action. To compel a new trial to permit the trial of these counterclaims along with the plaintiff's claim when the defendants are free to proceed in another action, seems to us unjustified.
It is lastly asserted that the trial court erroneously directed a verdict for the plaintiff. Again, we disagree. The note sued on was based upon consideration; each defendant admitted the debt evidenced by the note, each admitted that the note was in default, and each admitted signing it. There was no evidence presented to refute the plaintiff's claim.
The judgment appealed from is, therefore, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur.