Appeal by John McElrath, d/b/a McElrath Construction Company (McElrath) and his surety, Hartford Accident and Indemnity Company from a judgment rendered against them based upon a jury verdict. We reverse and remand.
The plaintiff, Consolidated Pipe and Supply Company (Consolidated) is a distributor of polyvinyl chloride ("PVC") pipe, a product manufactured from a petroleum derivative. Consolidated obtained its major supply of pipe from Ethyl Corporation. The defendant McElrath is a general contractor specializing in the installation of water systems utilizing this type of pipe.
In December, 1973 Ethyl Corporation notified Consolidated of a new pricing schedule effective December 17. At about this time the East Cullman Water District was asking for bids for installation of a water system. A Consolidated salesman, Mike Currier, discussed this job with McElrath with a view toward obtaining his order for the pipe requirements. There is a dispute concerning whether or not the price changes were discussed by them. Evidence was introduced establishing that Consolidated had mailed price quotations to various contractors, including McElrath, based upon Ethyl's increases, and that immediately before the submission of bids on the Cullman job "cut prices" (discounts on some of the materials) were transmitted to McElrath's office. It was Consolidated's position, moreover, though disputed by McElrath, that McElrath's prices were not firm but were based upon a possible escalation clause at the bottom of the price quotation mailed to him, and that this lack of firmness in price had been pointed out to McElrath several times. *Page 562 
In any event, McElrath's bid was accepted and a contract was entered into between East Cullman and McElrath. This contract did not contain a materials escalation clause. Based upon that contract McElrath ordered pipe from Consolidated. It was then discovered that the event now known as the Arab Oil Embargo had created supply problems, hence East Cullman, following a public meeting to consider the problem, granted McElrath an extension of time for commencing the work. A few days later Consolidated obtained McElrath's agreement to absorb the escalation of prices. Shortly thereafter McElrath began to pick up the pipe required for the job.
When McElrath failed to pay the balance due upon his account for pipe supplied to him, Consolidated filed this suit against him and his surety, Hartford on February 10, 1975. In his answer McElrath denied that he had purchased the materials on an escalated price basis; he maintained that he had consented to pay an escalated price for the materials under economic duress. He also counterclaimed for conversion, breach of contract, and breach of warranty. Hartford cross-claimed against McElrath to the extent of any recovery by Consolidated against McElrath, plus costs and attorney's fees, and later Hartford joined Mrs. McElrath as a third party because she was a co-signer of their indemnity agreement.
Following the general denial by Consolidated of McElrath's counterclaims on June 26, 1975, the case was set for trial on December 15, 1975 but was continued and reset for an April 19, 1976 trial. From the record it appears that this continuance was made to allow counsel to file amended answers.
When the case was called for trial on April 21, 1976, McElrath filed an "Amendment to Defendants' Answer and Counterclaim." This pleading was introduced with language which included the phrase "with leave of Court obtained," however the subsequent action of the trial court deprecates any such permission. Paragraph I denied an agreement based upon escalated prices, maintaining that the purchase was based upon discounted (and hence firm) prices. This paragraph also asserted that the purchase agreement McElrath executed, which committed him to pay prices prevailing on the date of delivery, was based upon duress.
In Paragraph II McElrath alleged that he was not indebted to Consolidated because the balance he allegedly owed did not give him credit for sums owed to him under his counterclaim.
Paragraphs III and IV were general denials.
Paragraph V contained three sub-parts. Part (a) alleged fraud on the basis of three separate misrepresentations: (1) that Consolidated represented to McElrath prior to his bid that the pipe was on hand; (2) that Consolidated represented to McElrath that it could deliver the materials to the job site upon one day's notice; and (3) at the time Consolidated made firm (price) quotations to McElrath it did not intend to fulfill his order at those prices but upon "whatever increased price it could force upon the defendant."
Part (b) alleged as a conclusion that the contract violated the good faith provisions of Title 7A, § 1-203 of the AlabamaCode (UCC), and that Consolidated was guilty of bad faith in its attempted enforcement of the contract.
Part (c) alleged as a conclusion that the agreement was harsh, oppressive, unfair and unconscionable under Title 7A, § 2-302 (1), Alabama Code (UCC).
Paragraph VI adopted all of paragraph V, referring to paragraph VI as an amendment to its counterclaim, and claimed damages "on account of the fraud, unconscionable conduct and bad faith of the plaintiff. . . ."
In response to this Amended Answer and Counterclaim, Consolidated filed a Motion to Strike. The trial court later disallowed those portions of McElrath's amendment which dealt with fraud, bad faith and unconscionability, basing its decision upon the tardiness of McElrath in raising those particular issues and the resulting prejudicial effect upon Consolidated. The trial court *Page 563 
allowed the amendments pertaining to breach of contract and duress because these were subjects which had been pleaded earlier by the parties and upon which discovery had proceeded for almost a year.
At the close of the evidence following a week-long trial, McElrath filed a "Further Amendment to Defendants' Answer and Counterclaim." This pleading adopted and supplemented paragraph V of the amended answer, in particular part (a), and alleged that, while Consolidated was aware that its supplier would escalate prices from January to May, 1974, it failed to communicate this information to McElrath, but lulled the defendant into believing that the prices quoted to him prior to his bid had remained constant. It also alleged that an agent of Consolidated without informing him, coerced McElrath into consenting to the price increases which might be visited upon him not to exceed 5%, knowing that increases had already become effective and that others were imminent. It further alleged that McElrath was induced to consent to escalated prices by an offer of materials immediately, and that he was damaged because Consolidated supplied him with only small quantities until after the June 3 price increase, constituting bad faith and the equivalent of fraud.
Paragraph VI-A of McElrath's "Further Amendment" amended the counterclaim by "adopting and supplementing" paragraph VI of the first amendment and also adopted in entirety paragraph V of the Further Amendment. This amendment, like its counterpart in the first amendment, was not denominated a counterclaim as required by Rule 7 (a), ARCP.
These amendments were considered by the trial court which granted motions for "Summary judgment" against the defendants' counterclaims dealing with breach of warranty, conversion, and fraud as realleged in the amended counterclaim. "In other words," said the Court, "the Court will define the issues to the jury that they are to decide and those counterclaims will not be among the issues which the Court will submit to the jury."
The jury rendered a verdict in favor of consolidated for the full amount claimed by it, and in favor of Hartford on its cross-claim against McElrath, but with respect to its award to Hartford, initially the jury awarded only $5,646.67, the attorney's fees. After giving instructions on this subject, the trial court resubmitted the issues of the correct award to the jury which then rendered a verdict in favor of Hartford which included the primary claim plus Hartford's attorneys' fees.
Defendants' motion for a new trial having been denied, this appeal followed.
In identifying the issues raised we have been required to consider a number of briefs and motions: From the appellant a main brief, a reply brief, a "last minute supplement to the reply brief," a "brief post argument brief," and a motion to strike the appellees' briefs. The appellees have filed a main brief, a reply to the appellant's supplemental brief, and a motion to strike appellant's fourth brief. The appellant-appellee Hartford filed one brief. This prolific production has served to obfuscate the issues rather than illuminate them. However, the first issue concerns the propriety of the trial court's ruling disallowing the defendants' amendment made on the day of trial.
Rule 15 (a), ARCP expresses a liberal policy when it states:
 [A] party may amend his pleading without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires. . . . (emphasis added).
The Official Committee Comments are also helpful in our interpretation of Rule 15, ARCP:
 Under the rule [15 (a)] it will be entirely irrelevant that a proposed amendment changes the cause of action on the theory of the case or that it states a claim arising out of a transaction different from that originally sued on or that it caused a change in parties. . . . Normally, *Page 564 
an amendment should be denied only if the amendment would cause actual prejudice to the adverse party. . . . (emphasis added).
Furthermore, the spirit of Rule 15, ACRP is explained by Champ Lyons, Jr. in his treatise 1 Alabama Practice p. 308 (1st ed 1973), which makes these comments about Rule 15:
 Pleadings are a means, not an end, and the action should be resolved on its merits, not upon technicalities. . . . Without the Rule's permissive approach to the right to amend, the allegiance to substance over form which permeates these rules would not be attainable.
Although it is recognized that the trial court has broad discretion in determining what "the interests of justice" require, he must not be found to have exercised that discretion in an arbitrary manner. This rule also substantially conforms to Alabama practice under former rules of common law pleading. For example, in Farmer v. Hill, 243 Ala. 543, 11 So.2d 160
(1942), cited by the appellants, this Court observed:
 Liberal rules of amendment both at law and in equity have found expression in statutes and rules of court, and have been given effect in judicial decisions as a well-established policy in the administration of justice. . . .
Federal courts likewise have inculcated a liberal policy in allowing amendments and Federal Rule 15 (a), which is substantially the same as our own rule, has been the focus of numerous cases and treatises. Wright and Miller in their treatise 6 Federal Practice and Procedure: Civil § 1484, state:
 Subdivision (a) encourages the court to look favorably on requests to amend. It states that `leave shall be freely given when justice so requires.' This proposition has been reinforced by innumerable judicial pronouncements by the federal courts. . . .
(footnote omitted) (emphasis added).
Also, the treatise IA Barron and Holtzoff, Federal Practice andProcedure, § 442 comments:
 Under this rule [15] leave to amend pleadings should be granted freely when justice so requires and the adverse party will not be prejudiced thereby, to clarify the issues and expedite the disposition of litigation. . . . (footnotes omitted) (emphasis added).
. . . . .
 Rule 15 (a) calls for liberality in allowing amendments, and the rules on amendments themselves are liberally construed by the courts, in order to ensure, so far as possible, that cases are decided on their merits. (footnotes omitted) (emphasis added).
For example, in Rosen v. Rex Amusement Co., 14 F.R.D. 75
(D.D.C. 1952), the district court stated that liberality should be the rule with respect to amendments and that a mere change in the theory of recovery would not ordinarily preclude amendment. In accord, Donohue v. New York Life Ins. Co.,9 F.R.D. 669 (D.Conn. 1949); Helene Curtis Industries v. SalesAffiliates, 105 F. Supp. 886 (S.D.N.Y. 1952); InternationalLadies' Garment W.U. v. Donnelly Garment Co., 121 F.2d 561 (8th Cir. 1941). It is apparent that the overwhelming weight of authority requires that amendments are to be liberally allowed.
The appellees argue that they would have been prejudiced by the allowance of the amendment and they cite Matlack, Inc. v.Hupp Corporation, 57 F.R.D. 151 (E.D.Pa. 1972). That court, in discussing the propriety of allowing an amended answer made these comments:
 Our survey of the cases interpreting rule 15 (a) has not persuaded us that a finding of prejudice to the opposing party, although dispositive when present, is the only factor justifying a refusal to permit a change in theory. . . . As we see it, a shift in theory should be denied, even in the absence of prejudice, where the party seeking to interpose it has been guilty of flagrant abuse, bad faith, or truly inordinate and unexplained delay. However, in the absence of these factors the question of prejudice should *Page 565 be the touchstone of the determination whether to permit the amendment. (footnote omitted) Moreover, in approaching that question, we believe that we must view the motion of prejudice broadly . . . (emphasis added).
The factor of prejudice was also discussed in Kerrigan'sEstate v. Joseph E. Seagram Sons, 199 F.2d 694 (3rd Cir. 1952) where the Court stated that as a practical matter the only reason for not allowing an amendment is prejudice to the opposing party. In Fli-Fab, Inc. v. United States,16 F.R.D. 553 (D.R.I. 1954), the district court observed that an amendment must be prejudicial to the opposing party before a denial will be warranted. Barron and Holtzoff, supra, also explain the nature of prejudice:
 Prejudice may be found, however, where the amendment will cause excessive delay or where a source of evidence has become unavailable or a statute of limitations would bar a new suit if the opposing party should lose the present action. . . . (footnotes omitted) (emphasis added).
Although the appellees assert that they would have been prejudiced by allowance of the amendment, they have not cited us any reference and we have found no proof in the record to support that contention. The appellees also argue that the amendment was tardy and the obvious inference was that it was used as a dilatory tactic. The record does not disclose a scintilla of evidence that the appellants' amendment was interposed in a dilatory manner. Even though the trial court based its motion to strike the portions of the amendment dealing with fraud, unconscionability, and oppressiveness of the contract, on the ground of tardiness, there is no evidence that the amendment could have been made earlier. In view of the fact that appellants' counsel did not finish the last deposition of Consolidated's employees until March 29, 1976, with trial beginning on April 21, 1976, there was not any showing that the delay was intentional or that bad faith existed in filing the amendment at the time of trial. Moreover, the appellants' counsel took three other depositions after that date but before the trial.
In addition, the appellees argue that Vernon Carpet Mills,Inc. v. Rossville Spinning Corporation, 344 So.2d 1205 (Ala. 1977), is controlling as to the present controversy. In that case the defendants filed an amended answer which included permissive counterclaims four days before the trial. The trial court granted the plaintiff's motion to strike the defendants' amendment and this Court found no error. However, that case is distinguishable because there a permissive counterclaim was asserted, which could have been brought in a later action, whereas here, the defendant has raised a compulsorycounterclaim which will be barred by res judicata if it is later asserted.
The overwhelming weight of authority convinces us that the trial court abused its discretion when it refused to allow the amendment offered by the defendants. The reason this is so is because the amendment would have allowed proof of those allegations contained in it and the evidence so authorized could have required jury instructions on the elements of fraud as alleged. Furthermore, one remedy available to the plaintiff at that stage of the proceeding would have been to request a continuance, and the record shows that the defendants made such a request on behalf of the plaintiff but it was denied by the Court.
Even though we have found it necessary to reverse for the refusal to allow the proffered amendment, we cannot refrain from commenting that compliance with our procedural rules would have foreclosed the necessity for review on that issue. Indeed, Rule 1 (c), ARCP, which mandates a construction of the rules "to secure the just, speedy and inexpensive determination of every action" has been frustrated in this case because of the absence of pre-trial discovery and amendment procedures provided by Rules 26 and 15, which could have been coordinated under the pre-trial procedure of Rule 16. Those rules are designed to prevent a willy-nilly approach to the formulation of issues, and their utilization reflects not only an economical attitude *Page 566 
about court and lawyer time but a responsible approach to the interests of clients as well. The trial court itself cannot be criticized for the erroneous ruling which requires reversal, since the record shows that he did not appreciably participate in the case until the trial date, even though he was required to make the ruling which placed the case in its posture for our review. This Court is confident that a repetition of the procedural difficulties which led to our unfortunate, but necessary, ruling will not be repeated.
Because of the failure to grant the amendment, the trial court committed prejudicial error requiring a reversal. Due to this error, we need not consider the other issues presented.
Accordingly, the judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., dissent.