The defendants, Ronald E. and Charlotte Burkett, appeal from the denial of their alternative motion for a judgment notwithstanding the verdict, a new trial, or for the trial court to alter, amend, or vacate a judgment. This judgment was one entered by the trial court in favor of the plaintiff, American General Finance, Inc., based on a jury's answers to special interrogatories.
We note, at the outset, that the factual background of this case is exceedingly complex; it involves numerous conveyances, numerous individuals and entities, and at least 10 transactions relating to real estate mortgages. In the interest of clarity, we have considerably narrowed the facts of this case to only those that are pertinent for purposes of our review.
The record indicates the following pertinent facts.
The Burketts held a first mortgage on an apartment complex located in Jefferson County, to secure a debt owed them. Sarah Horton held a second mortgage securing a debt of $73,000 on the property, which was subordinate to the Burketts' mortgage.
The record indicates that American General, for approximately $59,000, purchased, i.e., was assigned, the Sarah Horton mortgage. Also, the record indicates that when American General was assigned the mortgage by Sarah Horton, it appeared that the Horton mortgage, rather than the Burkett *Page 139 
mortgage, was the first mortgage on the property. It is undisputed that one day prior to the filing of the Horton mortgage assignment to American General, a full release of the Burketts' first mortgage on the property was filed. This release bore signatures purporting to be those of the Burketts.
The Burketts allege that they did not execute this release and that they remained the first mortgage holders despite its terms. American General asserts that the release was valid and that Sarah Horton, whose interest it was assigned, became the first mortgage holder because the release extinguished the Burketts' prior interest.
National Bank of Commerce ("NBC"), also a defendant in this case, came to hold a mortgage on the property subordinate to both the Burketts' and American General's mortgages.
The record indicates that the Burketts received payments on their mortgage note until March 1989, when payment ceased and a default occurred. Around July 1989 the Burketts discovered that the aforementioned release of their mortgage had been filed on March 12, 1989. As stated, this release was filed one day before the filing of the assignment of the Horton mortgage to American General.
The record indicates that after learning of the release, the Burketts, asserting their rights as first mortgage holders, foreclosed on the property and purchased the property in the foreclosure sale that followed, as the highest bidder. Later, NBC foreclosed on the property. American General also foreclosed and, like the Burketts, asserted its foreclosure rights as the holder of a first mortgage. Also, like the Burketts, American General obtained title to the property in foreclosure; thereafter, both American General and the Burketts held foreclosure deeds to the property.
The Burketts took possession of the property and began receiving the rental income from the property.
American General filed a declaratory judgment action and a claim for damages and other relief against the Burketts. Primarily, American General sought to determine its rights, asserting that the Burkett first mortgage had been released prior to the Burketts' foreclosure. American General averred that as a result of the release, the Burketts had no interest in the property and no right to foreclose; American General claimed that the Burketts' foreclosure deed was an invalid foreclosure proceeding and, therefore, that the Burketts' foreclosure deed was invalid. American General claimed that it was entitled to the rental income that the Burketts had received from the property by virtue of their foreclosure deed; it claimed that it, rather than the Burketts, held the valid foreclosure deed on the property.
The Burketts argue that the trial court made numerous reversible errors. The Burketts say that the trial court erred with regard to the exclusion of testimony and by giving erroneous jury instructions. These purported errors, however, were not preserved for review and we do not, therefore, address the merits of the Burketts' arguments as to these possible errors.
The record does not indicate that the Burketts made objections in the trial court to the jury instructions in question, a prerequisite to review by this Court.[1]
Ala.R.Civ.P. 51; Employers Cas. Co. v. Hagendorfer,393 So.2d 999, 1002 (Ala. 1981).
In the instance of the excluded testimony, the Burketts did not make an offer of proof in the trial court relating to the testimony excluded. From what is before us, it is unclear what counsel's purpose was in attempting to elicit the excluded testimony. Faced with the same situation in Ensor v.Wilson, 519 So.2d 1244, 1262 *Page 140 
(Ala. 1987), this Court stated: "When the trial court sustains an objection to a question that does not on its face show the expected answer, a party must make an offer of proof and explain the relevancy of the expected answer to preserve error for appellate review."
The Burketts' question to which an objection was sustained and testimony excluded, was directed to an American General employee. Counsel for the Burketts asked, "[D]o you remember whether you bought [any other mortgages] from SarahHorton — or from — or from this broker [other] than the mortgage we're talking about here?"
We cannot determine from the face of this question the expected answer, nor can we determine from the record that the purported relevance of the expected testimony was offered to the trial court after it sustained the objection. After the trial court sustained the objection, it instructed counsel for the Burketts that "it . . . has to be relevant." To that comment, counsel for the Burketts responded only, "I don't know how many mortgages he bought from Mr. Horton.[2] It might indicate a pattern of dealing between Mr. Horton and —."
Clearly, in the absence of an offer of proof, we cannot review this issue. To attempt to do so would necessitate impermissible speculation by this Court. See id.; C. Gamble, McElroy's Alabama Evidence § 425.01(4) (4th ed. 1991).
Our review is limited to the issue raised by the Burketts that is properly before us, whether the trial court erred in refusing to allow the Burketts to amend their answer prior to trial.
By amendment to their answer the Burketts sought to raise an issue relating to whether there was a lack of adequate consideration underlying American General's interest in the property in question. The trial court refused this amendment and the case went to trial on the issue of whether the Burketts' release of their first mortgage was valid.
Underlying this issue are the following facts:
According to the Burketts, they learned on August 30, 1990, that Sarah Horton may not have given adequate consideration for her interest in the mortgage that she assigned to American General. They say that they became aware of this possibility in the course of deposing her husband, Thomas Horton. The Burketts did not seek to amend their answer at that time. At that time, the Burketts' stated defense to this lawsuit was that the release that appeared to dissolve their interest in the property was forged.
Approximately four and a half months later, on January 15, 1991, the trial court issued a scheduling order setting a pre-trial conference and hearing for February 15, 1991. This order required that "all claims, including counterclaims, cross-claims and third party claims must be filed and service of process be undertaken prior to the . . . hearing date." This order also stated:
 "It is further ordered that attorneys shall appear at said time with full authority to admit and stipulate undisputed facts; to waive requirements for formal proof of documents; to furnish names and addresses of all witnesses, including experts, (except opposing parties to be called as witnesses) together with the expected testimony of the expert witnesses; and, to fully discuss the nature of the case, the theory of the parties, the admitted facts, the disputed facts and all points of law to be determined by the court, to establish a cut-off date for filing of all motions, a cut-off date for discovery, and to determine the estimated length of trial. . . .
 "EACH ATTORNEY IS TO BRING A SHORT WRITTEN SUMMARY OF THE CLAIMS AND CAUSES OF ACTION AND THE POSITION OF THE PARTY SUCH ATTORNEY REPRESENTS IN THIS CASE. . . .
 "This cause is set for [trial] before a jury on the 20th day of May, 1991. . . ."
It is undisputed that the Burketts did not amend their answer prior to this pre-trial *Page 141 
conference but, rather, within the Burketts' written pre-trial summary of their contentions, they asserted that inadequate consideration underlied American General's interest.
Five days after the pre-trial conference, the Burketts moved to amend their answer by including in it a verbatim recitation of the allegation from the pre-trial summary of their contentions, i.e., that American General's interest was not supported by adequate consideration. On February 22, 1991, American General filed a response in opposition to this amendment. On April 12, 1991, the trial court summarily denied the Burketts' motion to amend.
The Burketts argue that the trial court erred to reversal in refusing their amendment.
The amendment proposed is not one of right under Ala.R.Civ.P. 15(a). Rule 15(a) permits amendments as of right where they are made "any time before a responsive pleading is served" and provides that "if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, [one] may . . . amend at any time within thirty (30) days after it is served."
As to amendments within the discretion of the court, Rule 15(a) provides that "a party may amend his pleadings without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires." See Ex parte Tidmore, 418 So.2d 866 (Ala. 1982).
In McElrath v. Consolidated Pipe Supply Co.,351 So.2d 560, 564 (Ala. 1977), this Court stated that "it is recognized that the trial court has broad discretion in determining what 'the interests of justice' require," but that the trial court "must not [exercise] that discretion in an arbitrary manner." Stated differently, "the trial judge must allow a proposed amendment if it is necessary for a full determination of the merits of the case and it does not unduly prejudice the opposing party or unduly delay the trial."Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 7,321 So.2d 645 (1975).
"Rule 15 . . . is not carte blanche authority to amend . . . at any time. Discretion rests in the trial judge to deny amendments for good cause." Stallings v. Angelica UniformCo., 388 So.2d 942, 947 (Ala. 1980).
In McElrath, we held that the trial court erred in refusing an amendment to an answer. We stressed the liberality with which amendments should be granted, 351 So.2d at 564, and noted that in that case "there [was] no evidence that the amendment could have been made earlier." 351 So.2d at 565.
We find the present case to be distinguishable fromMcElrath. Unlike the defendants in theMcElrath case, the Burketts could have amended months before they did so.
In a similar situation, we stated in Stallings, "[I]n the instant case, the plaintiff had sufficient opportunity to discover the facts and to amend her complaint earlier and failed to do so. In view of this unexplained delay, leave to amend was properly denied." Id.
In Tidmore, we examined a situation where the plaintiff filed an amendment to her complaint approximately one year after she had learned that she had misnamed the defendant in her complaint. The trial court granted the defendant's motion to strike the amended complaint. 418 So.2d at 866.
In Tidmore, we observed that the plaintiff had been advised that she had named the wrong party but that she had taken no action to amend until after a summary judgment was entered against her. We held: "[G]iven the facts here and the long delay on the part of the plaintiff in offering the amendment, we cannot say that the trial court abused its discretion in striking the amendment." Tidmore, 418 So.2d at 868-69. We quoted 6 C. Wright and A. Miller,Federal Practice and Procedure § 1488 (1971); " '[I]n keeping with the purpose of Rule 15(a), which is to facilitate a determination of the action on its merits, a motion to amend should be made as soon as the necessity for altering the pleading becomes *Page 142 
apparent.' " Tidmore, 418 So.2d at 869.
In the present case, six months elapsed between the time that the Burketts first learned of the facts underlying their amendment and when they attempted to amend. In the interim, the trial court issued a scheduling order that can be construed as having been a reminder to the Burketts to amend. One month after the scheduling order the Burketts had still made no attempt to amend.
We note also that the Burketts have offered no explanation for their failure to take action to amend during the six months after they learned of the facts that they say prompted the proposed amendment.
However, the Burketts do make a persuasive argument that they were not required under the terms of the trialcourt's scheduling order to amend by February 15, 1991, the date of the pre-trial conference, because the scheduling order referred to "claims"; they say that an answer, the pleading they sought to later amend, is not a "claim."
Yet, irrespective of whether the scheduling order purported to require that amendments to answers were to be made by the February 15, 1991, deadline, the scheduling order should have had the effect of a reminder to the Burketts that they needed to amend promptly. It should have been evident to the Burketts from the express terms of the scheduling order that the trial court was attempting to facilitate the trial of a factually complex case and that all amendments and claims that could be reasonably identified by the parties should be made promptly, at least by the time of the pre-trial conference on February 15, 1991.
The trial court expressly stated in the scheduling order that in the February 15, 1991, pre-trial conference discovery deadlines would be set and the parties would disclose the names of their anticipated witnesses as well as the substance of those witnesses' testimony and that the parties would make stipulations as to proof of documents; and that the trial of this case would commence approximately three months from the date of the pre-trial conference. It should have been apparent to the Burketts that in order for matters such as anticipated witnesses, their testimony, evidentiary stipulations, and discovery deadlines to be settled upon at the pre-trial conference, all counterclaims, cross-claims, and amendments to complaints or answers that the parties could anticipate, needed to be made prior to the conference.
However, whether the scheduling order should have at least been taken by the Burketts as a reminder to amend, we emphasize again that it is undisputed that they had knowledge of the facts that formed the basis of the proposed amendment months before the scheduling order and for over a month after the scheduling order, before they attempted to amend. Moreover, they have offered no explanation for this delay.
The trial court had good cause for refusing the Burketts' amendment; therefore, the trial court did not abuse its discretion in denying it.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Arguably, the Burketts raised a proper objection to a jury instruction relating to a bona fide purchaser for value theory. They do not, however, make any argument on appeal relative to that objection. Instead, they argue a ground for that particular objection wholly different from the ground they asserted in the trial court. In short, although they did raise an objection to an instruction on this theory in the trial court, they did not raise the one they now argue, and, thus, did not preserve the error they complain of.
[2] "Mr. Horton" is evidently a reference to Sarah Horton's husband.