CRAWLEY, Judge.
This is the second time the parties have been before this court. In Eason v. Bynon, 781 So.2d 238 (Ala.Civ.App.2000) (“Eason I”), this court outlined the facts as follows:
“Mary Ellen Eason lives in the home place that she, her brother Leo, and her sister Elizabeth Eason Hardiman inherited from their parents. Ms. Eason is 75 years old; she has a ninth-grade education. Her brother Leo (who is now deceased) had a third-grade education and could not read or write.
“In 1988, Leo was charged with murder. [Robert P. Bynon, Jr.], a lawyer, agreed with Leo to defend him in the criminal prosecution for a fee of $25,000. Leo agreed to sign a $25,000 note, to be *819 secured by a real-estate mortgage on the home place he owned with his sisters. At trial, Bynon introduced a note and a mortgage, dated December 7, 1988, both purportedly signed by Mary Ellen Eason and Leo Eason and acknowledged by Shirley A. Franklin, a notary public.
“Ms. Eason testified that, on December 7, 1988, Bynon came to her home and drove her to the county jail, telling her that they were going to ‘get [her brother] out on bond.’ According to Ms. Eason, four people were present on that occasion: Ms. Eason; her brother Leo; Bynon; and the bail bondsman, a Mr. King. She testified that Bynon handed the bondsman $1,000 and then had her and her brother sign some papers that Bynon said were ‘bond papers.’ Ms. Eason testified that Bynon did not tell her she was signing a note and a mortgage. She said that she ‘didn’t even know what a mortgage note [was].’ She admitted that she did not read the documents before signing them. At trial, Ms. Eason was shown a copy of the note and the mortgage, and she acknowledged that the signatures were hers. However, she denied knowing the contents of the documents, denied signing them before a notary, and denied talking to anyone named ‘Shirley A. Franklin.’
“Bynon testified that Shirley A. Franklin was his secretary in 1988, that she was a notary, and that her acknowledgment appears on the note and the mortgage. When he was asked whether Ms. Franklin was present at the jail when the mortgage was executed, Bynon replied, ‘I don’t recall where that was signed.’ Bynon also did not recall who was present at the signing of the documents. When confronted with Ms. Ea-son’s testimony that she had ‘never signed any documents before a notary public,’ Bynon responded that he had ‘never lied to anybody while [he had] been practicing law.’ ”
781 So.2d at 239-40.
In Eason I, Bynon had sued Eason, seeking, among other things, a reformation of the mortgage to correct the legal description of the real property in which Ms. Eason, her brother, and her sister had an interest. Ms. Eason asserted the defense that the mortgage was invalid because of Bynon’s fraud and the notary’s violation of her legal duty. Ms. Eason demanded a jury trial. The trial court struck the jury demand and eventually entered a judgment reforming the mortgage.
Ms. Eason appealed; this court reversed, concluding that the trial court had erred by striking the jury demand. We stated that, although Bynon had requested equitable relief, for which a jury trial was not available, Ms. Eason had asserted a legal defense for which she had the right to a trial by jury. We held: “[T]he resolution of the equitable issue (whether the trial court should reform the legal description in the mortgage) was necessarily dependent on the resolution of the legal issue (whether the mortgage was valid).” 781 So.2d at 241.
On March 26, 2001, after our reversal, Ms. Eason moved for a summary judgment. She supported the motion with an affidavit, alleging facts tending to show that the mortgage made the basis of By-non’s action was invalid. Bynon responded and attached an affidavit asserting that, with respect to Ms. Eason’s interest in the property, there were genuine issues of material fact as to the validity of the mortgage, but with respect to the interest of Ms. Eason’s sister, Elizabeth Eason Har-diman, and her brother, Leo Eason, Bynon was, he said, entitled to a judgment on the pleadings because neither Elizabeth nor Leo had demanded a jury trial or had *820 appealed from the circuit court’s judgment reforming the mortgage.
On April 6, the circuit court denied Ms. Eason’s motion for a summary judgment and granted Bynon’s motion for a judgment on the pleadings. On April 16, Ms. Eason moved for leave to amend her original pleadings to assert a counterclaim against Bynon. The proposed counterclaim alleged fraud and sought $100,000 in compensatory damages and $100,000 in punitive damages. On April 26, Bynon moved to dismiss his claim against Ms. Eason. On April 30, the circuit court denied Ms. Eason’s motion for leave to amend her pleading. On May 4, Ms. Ea-son filed a postjudgment motion, asserting that the court had erred by disallowing her proposed counterclaim.
Also on May 4, counsel entered an appearance for Ms. Eason, as executrix of the estate of Leo Eason, deceased, and moved to alter, amend, or vacate the judgment, asserting that Bynon’s action against Leo should be dismissed, pursuant to Rule 25(a)(1), Ala. R. Civ. P. The executrix’s motion alleged that, on July 11, 2000, she had filed on the record a suggestion of Leo’s death, and that there had been no motion to substitute the proper party within six months of the suggestion of death; therefore, she maintained, Bynon’s action against Leo should be dismissed. The executrix also argued that the circuit court had erroneously reformed the mortgage because, she claimed, it was invalid. The circuit court denied the executrix’s motion on July 12, 2001. From the denial of her postjudgment motion, Ms. Eason appealed to this court.[1] This court transferred the appeal to the Alabama Supreme Court because the amount claimed in Ms. Eason’s counterclaim exceeded our jurisdictional limit. See § 12-3-10, Ala.Code 1975. The supreme court then transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Ms. Eason raises three issues. First, she argues that the circuit court erred by reforming the mortgage with respect to the interest of her brother Leo. She contends that the reformation was an attempt to circumvent this court’s holding in Eason I. In Eason I, we held that Ms. Eason was entitled to a jury trial on her defense that the mortgage was invalid. Because her brother Leo did not demand a jury trial or appeal the circuit court’s judgment reforming the mortgage, this court’s holding in Eason I had no application to Leo’s interest in the property-
Next, Ms. Eason argues that the circuit court erred by refusing to dismiss Bynon’s action against Leo pursuant to Rule 25(a)(1), Ala. R. Civ. P. That rule states:
“If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any county. Unless the motion for substitution is made not later than six months after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for service of the motion, the action shall in the absence of a showing of excusable neglect be dismissed as to the deceased party.”
Ms. Eason claims (1) that in her brief to this court on July 11, 2000, she suggested *821 Leo’s death upon the record and served the suggestion on opposing counsel and (2) that there was no motion to substitute the proper party within six months of the suggestion of death. Ms. Eason’s mention of her brother’s death in her appellate brief, however, does not constitute a formal suggestion of death. See Hawes v. Johnson & Johnson, 940 F.Supp. 697, 699-700 (D.N.J.1996) (holding that “[t]he mere reference to the death of [a plaintiff] in plaintiffs’ reply brief submitted in support of their class certification motion is insufficient to trigger the commencement of the ... time limit [for substituting parties]”). See generally Champ Lyons, Jr., 1 Alabama Rules of Civil Procedure Annotated 525 (3d ed.1996) (stating that “[p]assing reference to the death of a party in a pleading or motion does not suffice to start the time period for substitution. A formal suggestion of death is necessary.”). See Kissic v. Liberty Nat’l Life Ins. Co., 641 So.2d 250, 251 (Ala.1994) (holding that passing references, in a cross-claim and in a motion for joinder, to the death of the plaintiff were insufficient “to constitute a suggestion of death on the record, so as to commence the running of the six-month period for substituting a proper party under Rule 25”); Winter v. Cox, 553 So.2d 60 (Ala.1989) (holding that a notation on a case action summary sheet was insufficient as a suggestion of death). In Kissic, the Alabama Supreme Court explained the reason for requiring a formal suggestion of death:
“It is quite simple under Rule 25 to start the running of the time period for substituting a proper party for a deceased party by filing a clearly designated ‘statement of the fact of death’ or ‘suggestion of death’ and by serving that statement in accordance with the requirements of the rule. Rule 1, [Ala.] R.Civ.P., states that our rules of civil procedure should be construed so as to secure the just determination of every action. It is not the purpose of our rules to foreclose or bar potentially meritorious claims. Any construction of Rule 25 on our part that could, under certain circumstances, create a trap for an unwary attorney would surely violate the spirit, if not the letter, of our rules of civil procedure. Therefore, we conclude, as the federal courts have, that requiring adherence to the simple procedure contemplated by Rule 25(a)(1) is preferable to embarking on a case-by-case review to determine under what circumstances the filing and service of a document during litigation would be sufficient to start the running of the six-month limitations period.”
641 So.2d at 252 (citation omitted). Based on the foregoing authorities, we conclude that Ms. Eason’s mention, in an appellate brief to this court, that her brother had died, did not qualify as a “suggestion of death” under Rule 25, Ala. R. Civ. P.
Last, Ms. Eason argues that the circuit court abused its discretion by denying her motion to allow a counterclaim pursuant to Rule 13(f), Ala. R. Civ. P. That rule provides:
“When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.”
Ms. Eason argues that, because she was not represented by counsel when she filed her answer to Bynon’s complaint, and because she had no idea that she could or should assert a counterclaim based on the same facts as her defense alleging fraud, the “oversight, inadvertence, or excusable neglect” provisions of Rule 13(f) apply. She insists that “justice requires” that she, as a pro se litigant, be allowed to set up the omitted counterclaim.
This court and the Alabama Supreme Court have consistently held that it *822 is within the trial court’s discretion whether to allow an omitted counterclaim under Rule 13(f)- See, e.g., Hart v. Fid. & Deposit Co., 494 So.2d 52 (Ala.1986); Wells v. Geneva County Bd. of Educ., 646 So.2d 98 (Ala.Civ.App.1994). With very few exceptions, our appellate courts have generally affirmed the trial court’s exercise of discretion; whether the trial court granted or denied relief to a counterclaimant, we have usually upheld its action. See, e.g., Brad’s Indus., Inc. v. Coast Bank, 468 So.2d 129 (Ala.1985) (affirming the denial of relief); Wells, 646 So.2d at 100 (affirming the grant of relief).
Ms. Eason cites McElrath v. Consolidated Pipe & Supply Co., 351 So.2d 560 (Ala.1977), for the proposition that a trial court’s discretion in refusing an amendment is not unbridled and its judgment may be reversed. The relevant events in McElrath, however, took place before the Alabama Rules of Civil Procedure were adopted and that case did not involve an amendment to set up a compulsory counterclaim. Moreover, our supreme court has distinguished McElrath in a more recent case, emphasizing that, in McElrath, “ ‘there [was] no evidence that the amendment could have been made earlier.’ ” Burkett v. American Gen. Fin., Inc., 607 So.2d 138, 141 (Ala.1992) (quoting McElrath, 351 So.2d at 565).
In Brad’s Industries, our supreme court affirmed the trial court’s disallowance of a counterclaim when almost three years had passed between the time that the defendant filed its answer and the time it attempted to raise a counterclaim because, it held, “Brad’s had claimed the existence of ... the facts in support of its claims long before the filing of the counterclaim [and] Brad’s offerfed] no logical or credible excuse for the delay in filing.” 468 So.2d at 131. In Wells, this court affirmed the trial court’s allowance of a counterclaim raised by the defendants two and one-half years after they had filed their answer.
It is undisputed that Ms. Eason’s proposed counterclaim was based upon the same facts as her answer and that she “claimed the existence of ... the facts in support of [her] claim[] long before the filing of the counterclaim.” See Brad’s Indus., 468 So.2d at 131. The only excuse she offers for her delay in filing the proposed counterclaim is the fact that she was unrepresented by counsel when she answered Bynon’s complaint.
The record demonstrates that Ms. Ea-son, acting pro se, answered the complaint on January 15, 1999. On May 25, 1999, however, an attorney with Legal Services of Metro Birmingham, Inc., entered an appearance for Ms. Eason and filed an amended answer, asserting a statute-of-limitations defense. No counterclaim was asserted. The record shows that, three days later on May 28, 1999, the Legal Services attorney moved for leave to withdraw, and the circuit court granted the motion the same day.
Although Ms. Eason was represented by an attorney for only a short time, the record makes it clear that the attorney had examined the pleadings and discovered what, he thought, was an oversight in his chent’s pro se answer, namely: the failure to assert what he considered was a valid affirmative defense. The attorney then amended Ms. Eason’s answer to reflect that defense. We conclude that a counterclaim based on the facts alleged in Ms. Eason’s pro se answer could also have been asserted at that time. Cf. United States v. Boyce, 148 F.Supp.2d 1069, 1078-79 (S.D.Cal.2001) (stating “[t]hat the [defendants] were ... pro se when they filed their original answer is not persuasive. As recently as July 2000, the [defendants] moved for and were granted leave to amend their answer. Their briefs are de *823 void of any explanation as to why the ... counterclaim could not have been brought at that time”).
Nevertheless, even if we do not consider that Ms. Eason was, for a short time, represented by counsel and that counsel undertook to amend Ms. Eason’s pro se answer, we would hold that Ms. Eason had failed to present an excuse for the late filing of her counterclaim.
“A pro se litigant is not exempt from procedural rules merely because of an unfamiliarity with them. See Asam v. Devereaux, 686 So.2d 1222 (Ala.Civ.App.1996). ‘[T]he rules governing the operation of the courts of this state are no more forgiving to a pro se litigant than to one represented by counsel.’ Id. at 1228.”
Walker v. Blackwell, 800 So.2d 582, 588 (Ala.2001). We conclude that the circuit court did not abuse its discretion by disallowing the proposed counterclaim.
The judgment of the circuit court is affirmed.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.

. No appeal was filed on behalf of Ms. Eason in her capacity as executrix of Leo’s estate.